IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 27, 2005 Session

## STATE OF TENNESSEE v. SHERI LYNN COX, ALIAS

**Direct Appeal from the Criminal Court for Knox County**
**No. 75770     Mary Beth Leibowitz, Judge**

_____

**No. E2005-00240-CCA-R3-CD - Filed December 12, 2005**

_____

The appellee, Sherri Lynn Cox, was charged by presentment with theft of property valued between $1,000 and $10,000. The appellee moved to dismiss the presentment against her because a portion of the evidence against her had been lost. The trial court granted the motion, and the State appeals. Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Randall E. Nichols, District Attorney General; and C. Lewis Walton, III, Assistant District Attorney General, for the appellant, State of Tennessee.

Mike Whalen, Knoxville, Tennessee, for the appellee, Sheri Lynn Cox, alias.

**OPINION**

### I.  Factual Background

On October 15, 2002, a presentment was filed against the appellee charging her with theft of property valued between $1,000 and $10,000 from the Vine Middle School Parent Teacher Student Association (PTSA). We have gleaned the facts underlying the charge from the hearing on the appellee's motion to dismiss the presentment. The record reflects that from October 2001 to December 2001, the PTSA was involved in two fundraising activities at the school, a candy sale and a king and queen contest. The candy sale required students to check out boxes of candy bars in order to sell the individual candy bars. The king and queen contest involved candidates collecting cash contributions with the winners being the boy and girl who raised the most money. During both of these endeavors, the appellee was the treasurer for the PTSA, and Artiste Slay was the assistant treasurer. Both women had receipt books to keep track of the monies collected during both

fundraising efforts. Fifty-five receipts were issued by the appellee. In addition to the receipt books, the appellee kept a separate candy sale book to detail the amount of candy checked out and the money collected by each child. The candy book contained nineteen of the fifty-five receipts which were issued by the appellee. Finally, a king and queen report was compiled listing the candidates and the funds collected by each candidate.

Apparently, a question arose regarding a shortage in the amount of money collected. Therefore, the appellee, in the presence of Knoxville Police Department (KPD) Officer McNew, gave two receipt books, the candy sale book, and the king and queen report to a PTSA representative.[1] The representative in turn gave the items to Bonita Gillespie, an accountant, for her review. Gillespie's calculations revealed an estimated shortage of $6,513.73. On January 2, 2002, after completing her report, Gillespie returned the two receipt books, the candy sale book, the report from the king and queen contest, and her finished report to Linda Clark, the PTSA president. Clark kept the items in her office at Knoxville's Promise. On April 24, 2003, the appellee requested discovery. Thereafter, sometime in 2004, KPD investigators began trying to locate the receipt books. Clark relinquished custody of the candy sale book, the king and queen report, and Gillespie's report; however, the two receipt books could not be located.

Later, the appellee filed a motion to dismiss the presentment against her, arguing that State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), required a dismissal due to the lost evidence. The trial court conducted a hearing on the motion. At the hearing, the appellee argued that she "has been denied the opportunity to review these records and do [her] own analysis or audit. Nor will the defense be able to use the underlying records to cross examine the auditor on the accuracy of her report." The appellee contended that the remaining evidence was not a sufficient substitute for the missing receipt books. Specifically, the appellee noted that one of the nineteen receipts which were attached to the candy book was marked through with a large "X." The appellee contended that although no evidence existed indicating the meaning of the notation, Gillespie included the receipt in her report tracking missing funds. The appellee maintained that there was no way of knowing how many of the missing receipts were likewise marked with an "X."

The State argued that Gillespie's report, combined with the remaining materials, would serve as an acceptable substitute for the receipt books, noting that the nineteen existing receipts were cataloged in Gillespie's report. The report also noted the exact amounts reflected on the nineteen receipts.

The trial court found that no one was at fault for losing the receipt books, stating that all of the parties behaved in a professional manner. The court also stated that it believed Gillespie completed an "honest and proper report" based upon the materials she had been given. Regardless, the court noted that the appellee would not have any materials with which to cross-examine Gillespie or other witnesses. Specifically, the court found that the report "may be reliable within what it has,

---

[1] The record does not reflect the name of the PTSA representative who collected the books from the appellee or the name of the representative who gave the books to Gillespie.

but you can't prove it is complete." The court further found that the State would not be able to carry its burden of proof at trial with only Gillespie's report. Therefore, the court granted the appellee's motion to dismiss the presentment. On appeal, the State challenges the trial court's dismissal of the presentment.

## II.  Analysis

Initially, we note that the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial.  See Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001).  As such, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to the petitioner's guilt or innocence or to the potential punishment faced by a defendant.  See Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963).

In State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), our supreme court addressed the issue of when a defendant is entitled to relief when the State has lost or destroyed evidence that was alleged to have been exculpatory.  The court explained that a reviewing court must first determine whether the State had a duty to preserve the lost or destroyed evidence.  Ferguson, 2 S.W.3d at 917. Ordinarily, "the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law."  Id.  However,

> "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.  To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

Ferguson, 2 S.W.3d at 917 (quoting California v. Trombetta, 467 U.S. 479, 488-89, 104 S. Ct. 2528, 2534 (1984) (footnote and citation omitted)).

If the proof demonstrates the existence of a duty to preserve the evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

> 1. The degree of negligence involved;
>
> 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

> 3. The sufficiency of the other evidence used at trial to support the conviction.

Id. (footnote omitted). If the court's consideration of these factors reveals that a trial without the missing evidence would lack fundamental fairness, the court may consider several options. For example, the court may dismiss the charges or, alternatively, provide an appropriate jury instruction. Id.

Generally, a trial court's decision to admit or exclude evidence at trial will not be overturned absent an abuse of discretion. State v. James, 81 S.W.3d 751, 760 (Tenn. 2002); see also State v. William C. Tomlin, Jr., No. M2003-01746-CCA-R3-CD, 2004 WL 626704, at *3 (Tenn. Crim. App. at Nashville, Mar. 30, 2004), perm. to appeal denied, (Tenn. 2004). Further, "[t]he decision whether to dismiss an indictment lies within the discretion of the trial court." State v. Harris, 33 S.W.3d 767, 769 (Tenn. 2000). An abuse of discretion exists when the "'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

In the instant case, the appellee argued that in light of the missing receipt books the presentment against her should be dismissed. The State contended that adequate substitute evidence existed to proceed to trial. The trial court ruled in the appellee's favor, finding that there was insufficient substitute evidence. On appeal, the State argues that the trial court incorrectly applied the dictates of Ferguson.

We must begin our Ferguson analysis by determining whether the State had the duty to preserve the evidence, namely the two receipt books, which were lost. The State has the duty to preserve evidence that is exculpatory, or at the least material to the preparation to the appellee's defense. The trial court found that the missing receipts had potential exculpatory value, if not for the information directly contained on the receipts, then for the possible value as a cross-examination tool. While the exact nature of the evidence, whether exculpatory or inculpatory, is unclear, the receipt books were, at the very least, material to the preparation of the appellee's defense. Ferguson, 2 S.W.3d at 918. Therefore, the State had the duty to preserve the evidence. Accordingly, we must now determine the consequences of the breach of that duty. Ferguson, 2 S.W.3d at 917.

First, we must determine the degree of negligence involved. The trial court repeatedly stated that no one person was particularly at fault for losing the receipt books. There is no evidence that the receipt books were ever in police custody. The record reflects that the loss of evidence was merely a regrettable mistake, not the product of misconduct by the State. Thus, we conclude that the loss of the receipt books was attributable to simple negligence.

Next, we must examine the "significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available." Id. On appeal, the State argues that the trial court erroneously rejected the remaining evidence against

the appellee as a valid substitute for the missing evidence. The trial court found that Gillespie's report "may be reliable within what it has, but [the State] can't prove it is complete." The court also found that the State would not be able to carry its burden of proof at trial with just Gillespie's report and the remaining evidence. Further, the court was concerned that the appellee's ability to defend herself at trial via cross-examination would be severely hampered by the loss of the receipt books. We can find no abuse of discretion in this determination.

Third, we must consider the sufficiency of the convicting evidence. This determination is curtailed because no witnesses testified at the dismissal hearing. Nonetheless, the trial court found that the remaining evidence against the appellee would not suffice to establish the appellee's guilt beyond a reasonable doubt. Again, we conclude that the trial court did not abuse its discretion in making this finding.

Finally, we note that a trial court may dismiss charges against an accused if, after considering all of the Ferguson factors, the court determines that a trial without the missing evidence would not be fundamentally fair. Id. The trial court, acting within its discretion, chose to dismiss the presentment against the appellee. We can find no reason to fault the trial court for so doing.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE