# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### November 7, 2006 Session

## STATE OF TENNESSEE v. JEFFREY LEE FIELDS

**Appeal from the Circuit Court for Carroll County**
**No. 05CR14     C. Creed McGinley, Judge**

---

**No. W2005-02128-CCA-R3-CD  - Filed April 5, 2007**

---

A Carroll County Circuit Court jury convicted the defendant of driving under the influence of an intoxicant (DUI), third offense, *see* T.C.A. § 55-10-401 (2006), possession of a handgun while under the influence of an intoxicant, *see id*. § 39-17-1321(a) (2006), and possession of marijuana, *see id*. § 39-17-418(a), all Class A misdemeanors.  The jury acquitted the defendant of unlawful possession of drug paraphernalia, rolling papers, *see id*. § 39-17-425(a)(1) (2006), and unlawful possession of a prohibited weapon, a throwing star, *see id*. § 39-17-1302(a)(8) (2006).  The court sentenced the defendant for the DUI conviction to 11 months and 29 days suspended after serving 120 days.  For the possession of a handgun charge he received 11 months and 29 days suspended after serving 30 days.  Likewise, he received 11 months and 29 days suspended after 30 days for the possession of marijuana conviction.  All sentences were to run concurrently.  The defendant filed a timely notice of appeal and complains, only in regards to his DUI conviction, that (1) the trial "was fundamentally unfair due to the State's failure to preserve the video tape of the field sobriety tests . . ., which . . . would have been exculpatory in nature," and (2) "the verdict . . . was unreliable based upon [the deputy's] erroneous testimony . . . concerning the Breathalyzer Machine and the test he gave and the manner in which he gave it."  After review of the record and the briefs submitted by the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, J.J., joined.

Victoria L. DiBonaventura, Buchanan, Tennessee, for the Appellant, Jeffrey Lee Fields.

Robert E. Cooper, Jr., Attorney General & Reporter; David H. Findley, Assistant Attorney General; Hansel Jay McCadams, District Attorney General; and Stephen D. Jackson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The evidence supporting the convictions showed that Carroll County Sheriff's Deputy Michael Darnell testified that, on Setember 5, 2004, at approximately 2:00 p.m., he was traveling west in his patrol car on Highway 70, responding to a 9-1-1 call. He testified that he was traveling at about 65 to 70 miles per hour in a 55 mile-per-hour zone, and he neither had his sirens sounding nor his blue lights activated. As he approached the Hebron Church Road intersection, he saw the defendant's vehicle, a 1990 gray Ford F-150, pull from Hebron Church Road partially into his travel lane. Deputy Darnell testified that he took "evasive action and went left of the roadway, went off into a lady's yard, came back around, drove up around to where [the defendant] was, got out[,] and made contact with [the defendant]."

Deputy Darnell testified that, while he checked the defendant's driver's license, he detected alcohol on the defendant's breath. He then asked the defendant to exit his truck and perform field sobriety tests. Deputy Darnell testified that the defendant informed him of a leg injury, so Deputy Darnell asked him to perform the "finger to nose and five-finger count" tests. He testified that the defendant performed poorly on both tests, missing his nose, being unsteady on his feet, and getting confused when counting.

Deputy Darnell further testified that his patrol car video camera recorded the defendant's performance. However, he did not have the tape at trial because "[he] was asked to record [his] VHS-C tape onto another tape for other parties[, and w]hen [he] did that, the tape was damaged." He also testified that, after the defendant performed poorly on the tests, he arrested the defendant and placed him in his patrol car.

Deputy Darnell then contacted another deputy to drive the passenger of the defendant's vehicle home and a wrecker to tow the defendant's vehicle. Subsequently to the arrest, he searched the vehicle and recovered a bag of marijuana, a throwing star, and rolling papers from the driver's side door; a .380 semi-automatic pistol from underneath the driver's side seat; an empty Busch beer can from behind the truck seat; beer cans in the truck bed; and a 24-pack of beer about "three-quarters full."

Deputy Darnell testified that, after he made photographs and a list of the evidence, he informed the dispatcher that he was in route transporting the defendant to the Carroll County Jail, which he stated was approximately three miles from the Highway 70-Hebron Church Road intersection.

Upon arriving at the jail, Deputy Darnell took the defendant to the "breathalyzer room," where he read him the implied consent form. He testified that the defendant marked that he would submit to the test and signed the form. Deputy Darnell then typed information into the Intoxilyzer EXC-IR. He testified that he was certified in using the machine and that the machine had been certified by the appropriate Tennessee Bureau of Investigation (TBI) agent.

Deputy Darnell testified that he followed the TBI standards and procedures in administering the test. He testified that he observed the defendant for 20 minutes prior to having him take the test. During this time, Deputy Darnell testified that he was "[j]ust sitting there watching [the defendant,]" and the defendant did not burp, regurgitate, or put anything into his mouth. Deputy Darnell further testified that the machine "will only let you do certain things." He manually entered the start time of 15:00, 3:00 p.m. from his personal watch; the machine ran a blank test at 15:22, 3:22 p.m., showing that it was clear of any substance; and at 15:23, 3:23 p.m., the machine printed out a report, which he identified at trial, stating that the defendant's blood alcohol content was 0.09 percent. Deputy Darnell testified, we discern, that after manually entering the time from his watch, he used the "machine status" as his timing device to calculate the 20-minute waiting period. He also testified that his watch was not synchronized with the dispatcher's clock, but regardless of different time clocks, he observed the defendant for 20 minutes before the defendant took the test.

On cross-examination, Deputy Darnell testified that he only found one open beer can in the truck's cab, and he did not remember "black stuff" being on the can when he found it.

Deputy Darnell also testified that, upon entering the Carroll County Jail, the defendant did not sit at the "jailer's booth," but he took the defendant to the room holding the Intoxilyzer after the defendant emptied his pockets at the jailer's booth counter. Deputy Darnell testified that he filled out the implied consent report, writing 15:00 on the form while in the Intoxilyzer room. He testified that he read the defendant the implied consent form before he calibrated the machine. Deputy Darnell also testified somewhat confusingly that he then watched the defendant for twenty minutes before typing information into the machine. He testified that he had to enter the time, 15:00, into the machine and that the machine did not know the time. Then he "let the machine do its thing."

Deputy Darnell also testified that the dispatcher has a "CAD machine" and uses it to track deputies' activities. He testified that deputies converse with the dispatcher via radios. Deputy Darnell testified that it was 15:00 when he wrote 15:00 on the consent form, and according to the dispatcher's log using a separate timing devise, the defendant was arrested at 2:27 p.m. The log also showed that Deputy Darnell was in route to the jail with the defendant at 3:04 p.m., and at 3:09:53, he arrived at the jail with the defendant.

Deputy Darnell clarified that at 15:00 he entered the information into the Intoxilyzer, at 15:20 the machine started calibrating, at 15:22 the defendant provided the breath sample, and at 15:23 the machine printed the results.

On redirect examination, Deputy Darnell testified that he typed in 15:00, we discern from his personal watch, waited 20 minutes using the Intoxilyzer's time piece, and then pushed start. He testified that if he had entered 8:00, then 20 minutes later the machine would show 8:20.

After Deputy Darnell's testimony, the State rested its case, and the defendant recalled Deputy Darnell. He testified that he remembered testifying at the preliminary hearing that he used his personal watch to time the 20-minute observation period, that his watch had nothing to do with

the "breathalyzer clock," and that his watch, the "breathalyzer clock," and the dispatcher's clock were not synchronized.

The defendant then called James Hughes DeJarnette, the defendant's stepbrother and passenger on September 5, 2004, as a witness. He testified that earlier that day, he and the defendant had been target practicing. After they ate lunch in different places, they drove together to get cigarettes. He had no apprehension about riding with the defendant, and he testified that the defendant did not seem intoxicated.

Mr. DeJarnette testified that the defendant stopped at the Highway 70-Hebron Church Road intersection and then "eased up a couple of feet to make sure the right side was clear" because his view was obstructed by a sign. He testified that when he looked left, "a car was sliding about a hundred feet from [them], and it slid right by [them]." He stated that only after the vehicle passed him, did he notice that it was a patrol car. Mr. DeJarnette further testified that the deputy regained control after "about a quarter of [one] mile down the road."

Mr. DeJarnette testified that he observed the defendant take the field sobriety tests, and he did not notice the defendant do anything wrong. In his opinion, the defendant passed the tests. Also, he testified that the beer found in the truck had been there the day before.

On cross-examination, Mr. DeJarnette did not remember telling the deputy who took him home that he and the defendant had been drinking while target practicing. He also stated that he was sitting in the truck when the defendant performed one field sobriety test. He saw the defendant counting four or five times.

The defendant testified on his own behalf that he had been target practicing earlier in the day on September 5. He testified that he left his handgun in his truck after practicing. He also testified that he had two beers at lunch. After lunch, he drove Mr. DeJarnette to buy cigarettes at "Mack's store." Before reaching the store, he stopped at the Highway 70-Hebron Church Road intersection and had to pull past the stop sign because a sign obstructed his view. After looking left, he saw a car go by his vehicle, and once it was past him, he noticed it was a patrol car.

The defendant testified that Deputy Darnell gave him two sobriety tests. He stated, "I didn't do the nose test, either. I just did the finger test."

The defendant further testified that at the jail, he sat down at the corner of the jailer's cage, not in the room with the Intoxilyzer. He could not see the officer doing things to the machine because he could not see around the corner. The defendant testified that he sat there for approximately 10 minutes before going into the room with the Intoxilyzer, where Deputy Darnell showed him the implied consent form and said, "This here is you're consenting to take the blow test." The defendant signed the form in the "blow room." He stated that he did not remember how long he stayed in the room before taking the test.

-4-

On cross-examination, the defendant stated that he sat in the Intoxilyzer room "forever."

The State called Deputy Jonathon McDowell as a rebuttal witness, and Deputy McDowell testified that he drove Mr. DeJarnette home. Deputy McDowell testified that Mr. DeJarnette said that he and the defendant "had been driving around and had had some [beer] to drink and had been target practicing."

The jury found the defendant guilty of driving under the influence as well as other charges, but on appeal, he only raises issues concerning his DUI conviction. He argues, in essence, that his trial was fundamentally unfair because of the State's failure to preserve alleged exculpatory evidence, Deputy Darnell's videotape of the field sobriety tests, and that the guilty verdict was unreliable due to Deputy Darnell's erroneous testimony regarding the Intoxilyzer and its results.

We initially address the State's contention that the defendant waived both issues by (1) failing " to object to the proof regarding the field sobriety test . . . , or that the defendant failed to request a missing evidence charge," and (2) failing to "raise[] a *Sensing* challenge prior or during the trial," *see State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992) (establishing foundation factors for admissibility of intoximeter test results). Tennessee Rule of Appellate Procedure 36(a) states that appellate relief is generally not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error." Tenn. R. App. P. 36(a); *see State v. Sims*, 45 S.W.3d 1, 16 (Tenn. 2001). The failure to make a contemporaneous objection to the admission of evidence constitutes a waiver of the issue on appeal. *See* Tenn. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record."); *State v. Cook*, 9 S.W.3d 98, 103 (Tenn. 1999) (holding "that a defendant is not required to challenge a breath-alcohol test by filing a pretrial motion pursuant to Tenn. R. Crim. P. 12(b)(3), but rather, may make a timely objection at trial if the prosecution has failed to establish the *Sensing* requirements"). In the present case, the defendant did not object to the testimony during trial, and nothing in the record indicates that the defendant raised the *Sensing* issue prior to or during trial. Therefore, the defendant has waived both issues. However, in the interest of justice, we opt to consider the issues on the merits.

First, we address whether the defendant's trial was fundamentally unfair because the State failed to preserve the videotape of the field sobriety tests. The defendant relies substantially upon *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999). In *Ferguson*, officers videotaped the defendant's performance on field sobriety tests administered as part of a driving under the influence investigation; however, the taped tests were inadvertently "taped over" before they were viewed by anyone. *Id*. at 914-15. Our supreme court determined that, for purposes of applying the Tennessee Constitution's "law of the land" clause to issues of the State's losing, damaging, or destroying potentially exculpatory evidence, a balancing test should be utilized. First, the court should "determine whether the State had a duty to preserve the evidence." *Id*. at 916. If the State failed to discharge a duty to preserve evidence, the court then determines

1. The degree of negligence involved;

2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

3. The sufficiency of the other evidence used at trial to support the conviction.

*Id*. at 917.

In the present case, the ruling in Ferguson obligates the State to preserve the evidence. *See id*. at 918; *see also State v. Nathaniel Robinson, Jr.*, No. E2004-02191-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Knoxville, Sept. 19, 2005) (stating that State had a duty, based on *Ferguson*, to preserve videotape evidence of the defendant taken at the jail that recorded the defendant's booking process).

That said, we reject the claim that the destruction of the videotape deprived the defendant of a fair trial. There is no evidence in the record that Deputy Darnell's unintentional destruction of the tape was due to gross negligence. Although the probative value of the videotape is high, the sufficiency of the other evidence supports the jury's verdict. Deputy Darnell testified that he smelled alcohol on the defendant's breath, he was unsteady on his feet, opened and unopened beer was found in his truck, and his blood alcohol content was 0.09 percent. The factors weigh in favor of the State, and we hold that the defendant received a fair trial even without the videotape.

Second, the defendant claims that the guilty verdict was unreliable due to Deputy Darnell's erroneous testimony regarding the Intoxilyzer and its results.

In *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992), the supreme court held that as a foundation for admissibility of intoximeter test results, a testing officer must be able to address the following six points:

> . . . (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6)

-6-

identify the printout record offered in evidence as the result of the test given to the person tested.

*Id*. at 416.; *see State v. Kimberly M. Larson*, No. M1999-00507-CCA-R3-CD, slip op. at 7-9 (Tenn. Crim. App., Nashville, Aug. 4, 2000) (holding that the breath test results from an intoxilyzer were admissible because the *Sensing* factors were met, namely that the machine had been properly calibrated and certified, that the proper testing procedures were followed, and that the officer properly observed the defendant and checked her mouth prior to the test).

The defendant argues that factor four concerning the 20-minute observation period was not satisfied. He bases his argument on a comparison of the time on the printout to the time shown in the dispatcher's log. Although Deputy Darnell's testimony is somewhat confusing at times regarding this issue, we surmise from the record, that he entered the start time from his personal watch that was neither synchronized with dispatcher's clock nor the Intoxilyzer's clock, and then he waited 20 minutes before administering the test as shown by the Intoxilyzer's printout. In addition, at the motion for new trial hearing, the trial court credited Deputy Darnell's trial testimony that he observed the defendant for 20 minutes before administering the test, and the court found that the *Sensing* factors were met. We do not second-guess the trial court's credibility determinations. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (stating questions regarding witness credibility and resolution of conflicts in the evidence are matters entrusted to the trial judge).

We hold that the *Sensing* factors were met and that the jury verdict is reliable. *See State v. Kenneth Wayne Ball*, No. E2004-00501-CCA-R3-CD, slip op. at 8-9 (Tenn. Crim. App., Knoxville, Apr. 6, 2005) (holding that the trial court did not err in admitting the results of the intoximeter test where the time on the implied consent form varied from the machine's printout time but the officer testified that he observed the defendant for 20 minutes).

For the foregoing reasons, the judgment of the trial court is upheld.

_____
JAMES CURWOOD WITT, JR., JUDGE