IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 12, 2011 Session

**STATE OF TENNESSEE v. JOSEPH STEELE**

**Direct Appeal from the Circuit Court for Hardin County**
**No. 9129     C. Creed McGinley, Judge**

_____

**No. W2010-01303-CCA-R3-CD  - Filed July 26, 2011**

_____

A Hardin County grand jury indicted the Defendant, Joseph Steele, for rape of a child less than thirteen years of age.  The Defendant filed a motion to dismiss the indictment because the State had allegedly lost or destroyed a videotape of the victim's interview with Michigan Children's Services.  After a hearing, the trial court dismissed the indictment, and the State now appeals the trial court's dismissal of the indictment.  After a thorough review of the record and relevant authorities, we conclude that the trial court erred when it dismissed the Defendant's indictment without discussing the relevant factors required by *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999).  We, therefore, reverse and remand to the trial court to reconsider and make findings of fact regarding whether dismissal of the Defendant's indictment is appropriate in light of *Ferguson*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J. and JAMES CURWOOD WITT, JR., J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Hansel J. McCadams, District Attorney General; Eddie N. McDaniel, Assistant District Attorney General, for the Appellant, State of Tennessee.

Ryan B. Feeney, Selmer, Tennessee, for the Appellee, Joseph Steele.

**OPINION**
**I. Facts**

On May 12, 2009, Keith Amos, a police officer, swore to an Affidavit of Complaint

that alleged that the Defendant committed rape of a child. The complaint specifically alleged:

> BETWEEN 07-01-1994 AND 01-01-2000 [THE DEFENDANT] DID COMMIT THE ACT OF RAPE WHEN HE RAPED HIS STEPDAUGHTER. THIS INCIDENT STARTED WHEN SHE WAS A JUVENILE (07-01-1994) AND WENT ON UNTIL 07-21-2000. THE RAPE OCCURRED . . . IN OLIVE HILL TN. THE HOME OF [THE DEFENDANT].

On that same day, a warrant was issued for the Defendant's arrest. The Defendant appeared before the court in June and was released on bond. On August 25, 2009, after the Defendant's preliminary hearing, the General Sessions court judge bound the Defendant's case over to the Hardin County grand jury. On November 16, 2009, the Hardin County grand jury indicted the Defendant on one charge of rape of a child, his stepdaughter, S.K.[1]

On November 23, 2009, the Defendant was arraigned. Shortly thereafter, on December 1, 2009, the Defendant's attorney filed several motions, including a motion requesting that the State produce evidence against the Defendant. The Defendant filed a motion to compel the State to produce a videotape copy of the victim's interview with the Michigan Children's Services ("MCS tape"). The trial court ordered the State to produce a copy of this videotape to the Defendant by March 2, 2010. On March 22, 2010, the Defendant filed a motion to dismiss his indictment, with an attached memorandum of law, on the basis that the State had failed to produce a copy of the MCS tape and asserted his belief that the tape had been lost or destroyed. Attached to the motion was the affidavit of Randy S. Servia, a trooper with the Michigan State Police, who swore that on October 28, 2007, S.K., who was nineteen at the time and living in Michigan, came to the Michigan State Police and reported that the Defendant had engaged in sexual intercourse with her while she lived with him in Tennessee. In the affidavit, Trooper Servia swore that S.K.'s original interview was videotaped, that tape being the MCS tape, and placed into evidence with the Michigan State Police.

In the affidavit, the trooper went on to swear that he forwarded a copy of the MCS tape and his report to officers in Tennessee and that he confirmed they received the tape and his report. After following up, Trooper Servia learned the case was ultimately assigned to Detective Keith Amos with the Hardin County Sheriff's Department. Detective Amos told Trooper Servia that he interviewed S.K. and her mother and that the Defendant had been charged with rape of a child.

---

[1]In order to protect the victim's privacy, this Court will refer to her by her initials only.

The trial court held a hearing on the Defendant's motion to dismiss his indictment. At the hearing, the following evidence was presented: The Assistant District Attorney General ("ADA") told the court that the Michigan trooper sent the MCS tape to an employee in the Department of Safety, who had subsequently retired. That retired employee gave the MCS tape to another employee, who had also retired. The MCS tape, the ADA said, was never received by Hardin County officers. The ADA said, however, that Officer Amos personally interviewed S.K. and that his interview was the basis for the indictment against the Defendant. Further, the victim testified in person at the Defendant's preliminary hearing.

The Defendant's attorney informed the trial court that the videotape was a piece of evidence that was critical to the defense, in part because the allegations involved acts that occurred ten to twelve years ago. The videotape, the Defendant asserted, was made at a point in time closer to the time the sexual assault took place than S.K.'s testimony at the preliminary hearing. Further, because certain dates and places would be at issue at trial, the videotape could be used to cross-examine S.K. when she testified at trial. The State, the Defendant argued, failed to satisfy its duty to preserve the evidence. The Defendant said he was, therefore, entitled to have his case dismissed pursuant to *Ferguson*.

Based on the State's failure to preserve the MCS tape, the trial court granted the Defendant's motion to dismiss. After so doing, the State asked if the trial court had considered the fact that the tape did not have anything to do with the charges. The following occurred:

> THE COURT: They are saying it is material to the preparation of their defense. You're saying we've still got a person who can testify.
>
> GENERAL McDANIEL: Who has testified.
>
> THE COURT: Who has testified, but you can't show what her prior statement was. That's what the crux of it is.
>
> GENERAL McDANIEL: Probably, I mean I can produce the trooper that interviewed her.
>
> THE COURT: I think the State, particularly on a Class A felony, is under an obligation to take steps to preserve all their evidence. The "Motion to Dismiss" is sustained.

The trial court did not issue a written order granting the motion to dismiss. The State filed a timely notice of appeal.

## II. Analysis

On appeal, the State contends that the trial court did not properly grant the Defendant's motion to dismiss because it did not properly consider the factors enumerated in *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), and disregarded the additional evidence that the State was prepared to present at trial to support the Defendant's guilt. The Defendant counters that the trial court properly dismissed his indictment.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides for every defendant the right to a fair trial. To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 110-11 (1976).

*State v. Ferguson* governs claims regarding the State's duty to preserve potentially exculpatory evidence. 2 S.W.3d 912, 917 (Tenn. 1999). "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tennessee Rule of Criminal Procedure 16, or other applicable law." *Id*. (internal footnote omitted). The analysis under *Ferguson* is only triggered, however, if the alleged exculpatory evidence is determined to be material. *Id*. To be material, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. Once the court determines that the evidence is material and the State failed in its duty to preserve the evidence, *Ferguson* requires the trial court to consider the following factors which bear upon the consequences of the State's breach of its duty: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction." *Id*. (internal footnote omitted).

The facts presented in *Ferguson* are analogous to the facts in the case presently before us. In *Ferguson* the Tennessee Supreme Court articulated the issue presented as, "What are the factors which should guide the determination of the consequences that flow from the State's loss or destruction of evidence which the accused contends would be exculpatory?" *Id*. at 914. In so deciding, the Court stated it must determine, "Whether a trial, conducted without the destroyed evidence, would be fundamentally fair?" *Id*. *Ferguson* involved a case in which a defendant had been found by police slumped in the driver's seat of a vehicle. *Id*. The arresting officer conducted several field sobriety tasks, which were recorded on

videotape, and determined from them and from other observations that the defendant was under the influence of alcohol. *Id*. The videotape of the field sobriety tasks was inadvertently "taped over" before anyone could view it. *Id*.

The *Ferguson* Court stated:

The analysis of both *Brady* and *Agurs* concerns the prosecution's suppression of "plainly exculpatory" evidence. This strikes a sharp contrast to the case under review wherein the existence of the destroyed videotape was known to the defense but where its true nature (exculpatory, inculpatory, or neutral) can never be determined.

The question that we address today is what consequences flow from the State's loss or destruction of evidence alleged to have been exculpatory.

After a thorough analysis, the Court adopted for Tennessee a balancing approach similar to the one espoused by the Supreme Court of Delaware in *Hammond v. State*, 569 A.2d 81, 87 (Del. 1989). The Court explained that the first step in the analysis is determining whether the State had a duty to "preserve" the evidence. *Id*. at 917. "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." *Id*. (footnote omitted). However,

[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id*. (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). Only if the proof demonstrates the existence of a duty to preserve and further shows that the State has failed in that duty must a court turn to a balancing analysis involving consideration of the following factors: "1. The degree of negligence involved; 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and 3. The sufficiency of the other evidence used at trial to support the conviction." *Id*. (footnote omitted). If the court's consideration of these factors reveals that a trial without the missing evidence would lack fundamental fairness, the court may consider several options, such as dismissing the charges or providing an appropriate jury instruction. *Id*.

This Court has previously stated that "the mere possibility of exculpatory content does not trigger a finding that the State failed in its general duty to preserve evidence under *Ferguson*." *State v. Ronnie D. Sims*, No. M2004-02491-CCAR3-CD, 2005 WL 3132441 at *8 (Tenn. Crim. App., at Nashville, Sept. 21, 2005) (citing *State v. Coulter*, 67 S.W.3d 3, 54-55 (Tenn. Crim. App. 2001)), *perm. to appeal denied* (Tenn. Mar. 20, 2006).

In the case under submission, it is not clear whether the video taped interview contained inculpatory, exculpatory, or neutral evidence. The trial court made no specific finding that the State had a duty to preserve the video tape and failed in this duty. Even though the trial court stated, "I think the State, particularly on a Class A felony, is under an obligation to take steps to preserve all their evidence," the trial court failed to take the additional step of engaging in the *Ferguson* balancing test. We are, therefore, constrained to reverse this case and remand it for the trial court's reconsideration. Upon remand, the trial court should consider whether the State had a duty to preserve the videotape in light of the *Ferguson* balancing test. *See State v. Tommy Joe Owens*, No. E2007-02296-CCA-R3-CD, 2009 WL 4931340, at *18-20 (Tenn. Crim. App., at Knoxville, Dec. 22, 2009) (concluding defendant's trial for aggravated child abuse trial not "fundamentally unfair" according to *Ferguson* when State inadvertently lost videotapes of the interviews of the victims), *Tenn. R. App. P. 11 application denied* (Tenn. May 11, 2010). *Cf State v. Dustin Wayne Capps*, No. E2007-02734-CCA-R3-CD, 2009 WL 690685, at *4-5 (Tenn. Crim. App., at Knoxville, Mar. 13, 2009) (affirming the trial court's dismissal of the defendant's indictment when the State inadvertently lost a videotape of his robbing of a convenience store), *no Tenn. R. App. P. application filed*.

## II. Conclusion

After a thorough review of the record and the applicable law, we reverse and remand this case to the trial court for findings in light of *State v. Ferguson*, 2 S.W.2d 912, 917 (Tenn. 1999).

_____
ROBERT W. WEDEMEYER, JUDGE