IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

September 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| Appellee, | ) | FILED: September 20, 1999 |
| | ) | |
| v. | ) | WASHINGTON COUNTY |
| | ) | |
| MARVIN K. FERGUSON, | ) | HON. LYNN W. BROWN, JUDGE |
| | ) | |
| Appellant. | ) | NO. 03-S-01-9803-CR-00029 |

For Appellant:

DENNIS L. TOMLIN
Hendersonville, TN

For Appellee:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

MICHAEL W. CATALANO
Assistant Attorney General
Nashville, TN

JOE C. CRUMLEY, JR.
District Attorney General
Johnson City, TN

OPINION

AFFIRMED                                           BIRCH, J.

The question presented for our determination is: What are the factors which should guide the determination of the consequences that flow from the State's loss or destruction of evidence which the accused contends would be exculpatory? The State urges that we adopt the bad faith analysis announced in Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).[1] Two reasons prompt us to reject this analysis: (1) we find, under the circumstances, that the due process principles of the Tennessee Constitution are broader than those enunciated in the United States Constitution; and (2) fundamental fairness, as an element of due process, requires that the State's failure to preserve evidence that could be favorable to the defendant be evaluated in the context of the entire record.

Accordingly, we promulgate today an analysis in which the critical inquiry is: Whether a trial, conducted without the destroyed[2] evidence, would be fundamentally fair?[3] Using this

---

[1]Under Arizona v. Youngblood, unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

[2]"Destroyed" includes lost evidence as well as evidence which was not preserved.

[3]"Fundamental fairness" is a concept which, by necessity, defies exact definition. As a general rule, however, a trial lacks fundamental fairness where there are errors which call into question the reliability of the outcome. See Lofton v. State, 898 S.W.2d 246, 248 (Tenn. Crim. App. 1994); see also Watkins v. State, 216 Tenn. 545, 552-53, 393 S.W.2d 141, 144 (1965)("A fundamental principle of Anglo-American law is that a person accused of a crime is entitled to a fair and impartial trial by his peers."); Betts v. Brady, 316 U.S. 455, 462, 62 S. Ct. 1252, 1256, 86 L. Ed. 1595, 1602 (1942)("Asserted denial[s of due process are] to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other

analysis, we find that the appellant's trial was a fundamentally fair one despite the loss of the videotaped evidence. Accordingly, and for the reasons herein stated, the judgment of the Court of Criminal Appeals is affirmed.

I

At or near four o'clock on the morning of November 18, 1992, Officer Edwin A. Murray of the Johnson City Police Department observed a van parked on an I-181 ramp with its engine running. Murray approached the vehicle and observed Marvin K. Ferguson, the appellant, "slumped" over the steering wheel. Upon opening the door and awakening Ferguson, Murray smelled a strong odor of alcohol and noticed that Ferguson's speech was slurred. Murray administered two field sobriety tests: namely, heel-to-toe and horizontal gaze nystagmus.[4] Concluding from these tests and from his other observations that Ferguson was under the influence of an intoxicant, Murray arrested him and transported him to the police station where additional field sobriety tests were apparently conducted.[5] These additional tests were recorded on a videotape which was inadvertently "taped over" before anyone could view it.

_____

circumstances, and in the light of other considerations, fall short of such denial.").

[4]For a more complete description of this test, see State v. Murphy, 953 S.W.2d 200 (Tenn. 1997).

[5]Murray could not remember conducting any sobriety tests other than those in the field, although he admitted that it was normal departmental procedure to conduct additional tests at the police station.

At trial, Ferguson's theory was that he occasionally suffered from vascular or migraine-type headaches that included *scotoma*,[6] which affected his vision and coordination. He testified that he had suffered just such a headache prior to his arrest. To support his theory, Ferguson presented expert medical testimony describing this condition and explaining that during a "spell" Ferguson's conduct could be perceived by a layperson as the result of alcohol intoxication.

## II

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides for every defendant the right to a fair trial. To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196, 10 L. Ed. 2d 215, 218 (1963). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. United States v. Agurs, 427 U.S. 97, 110-11, 96 S. Ct. 2392, 2401, 49 L. Ed. 2d 342, 353-54 (1976).

The analysis of both Brady and Agurs concerns the prosecution's suppression of "plainly exculpatory" evidence. This strikes a sharp contrast to the case under review wherein the

---

[6]Ferguson's medical expert described *scotoma* as being a type of visual disturbance followed by dizziness, hesitant speech, nausea, and a throbbing headache.

existence of the destroyed videotape was known to the defense but where its true nature (exculpatory, inculpatory, or neutral) can never be determined.

The question that we address today is what consequences flow from the State's loss or destruction of evidence alleged to have been exculpatory. Ferguson alleges that his due process rights were violated by the destruction of the videotape of the field sobriety tests administered at the police station. On the other hand, the State's contention is that because the evidentiary nature of the videotape can never be known, the appropriate analysis should inquire into the State's bad faith (or lack of it) in the destruction of the evidence. See Arizona v. Youngblood, 488 U.S. at 57-58, 109 S. Ct. at 337, 102 L. Ed. 2d at 289.

Youngblood is the leading federal case regarding the loss or destruction of evidence. In Youngblood, the police's failure to refrigerate a sodomy victim's semen-stained clothing precluded testing, the result of which might have exonerated the accused. The United States Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58, 109 S. Ct. at 337, 102 L. Ed. 2d at 289. Thus the Court concluded that the State had no constitutional duty to preserve the clothing even though testing may have been useful to the accused.

5

Several states have embraced the bad faith analysis of Youngblood and found that a similar showing of bad faith is required under their respective constitutions. See, e.g., Collins v. Commonwealth, 951 S.W.2d 569 (Ky. 1997); State v. Drdak, 411 S.E.2d 604 (N.C. 1992); State v. Ortiz, 831 P.2d 1060 (Wash. 1992) (holding that no analytic basis existed to interpret Washington's due process clause more broadly than the federal provisions); accord State v. Copeland, 922 P.2d 1304 (Wash. 1996). The Georgia Supreme Court has agreed that to establish a due process violation a defendant must prove bad faith, but the court also required the trial court to consider the materiality of the lost or destroyed evidence. Walker v. State, 449 S.E.2d 845, 848 (Ga. 1994).

Other states have recognized that "[t]here may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defendant as to make a criminal trial fundamentally unfair." Youngblood, 488 U.S. at 61, 109 S. Ct. at 339, 102 L. Ed. 2d at 291 (Stevens, J., concurring in the result). These states have rejected a pure Youngblood analysis, focusing instead on the materiality of the unavailable evidence in determining whether a due process violation has occurred. See, e.g., Ex parte Gingo, 605 So. 2d 1237 (Ala. 1992); Thorne v. Department of Pub. Safety, 774 P.2d 1326 (Alaska 1989); State v. Matafeo, 737 P.2d 671 (Haw. 1990); Commonwealth v. Henderson, 532 N.E.2d 496 (Mass. 1991); State v. Osakalumi, 461 S.E.2d 504 (W. Va. 1995).

6

Several of these states have determined that due process claims arising out of lost or destroyed evidence must be evaluated using a "balancing" approach. As an example, the Delaware Supreme Court, after having determined that the state breached a duty to preserve evidence, employed a balancing approach which focuses on the following three factors: (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence, considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to sustain the conviction. Hammond v. State, 569 A.2d 81, 87 (Del. 1989).[7]

We now must determine whether the bad faith analysis of Youngblood adequately protects the right to a fair trial under the due process clause of the Tennessee Constitution. See Tenn. Const. art. I, § 8[8]. Although this Court has previously construed Tenn. Const. art. I, § 8, as "synonymous with the 'due process of law' provisions of the federal constitution," State ex rel. Anglin v. Mitchell, 596 S.W.2d 779, 786 (Tenn. 1980), we have also recognized

_____

[7]The Alaska Supreme Court adopted a similar approach which requires the court to first determine whether the state has a duty to "preserve and make available to a criminal defendant material evidence which may prove important in the preparation of the accused's defense." Thorne v. Department of Pub. Safety, 774 P.2d at 1330. If the duty to preserve was breached, the court must then ascertain the consequences that flow from this breach, which is determined by the degree of culpability on the part of the state, the importance of the evidence lost, the prejudice suffered by the accused, and the evidence of guilt adduced at the trial or hearing. Id. at 1331.

[8]Tenn. Const. art. I, § 8, provides "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

7

that "this Court, as the final arbiter of the Tennessee Constitution, is always free to expand the minimum level of protection mandated by the federal constitution." Burford v. State, 845 S.W.2d 204, 207 (Tenn. 1992). Thus, we will examine Youngblood and explain why we reject its analysis.

According to Youngblood, unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law. In this regard, proving bad faith on the part of the police would be, in the least, extremely difficult. In addition, the Youngblood analysis apparently permits no consideration of the materiality of the missing evidence or its effect on the defendant's case. The conclusion is that this analysis substantially increases the defendant's burden while reducing the prosecution's burden at the expense of the defendant's fundamental right to a fair trial.

Because we deem the preservation of the defendant's fundamental right to a fair trial to be a paramount consideration here, we join today those jurisdictions which have rejected the Youngblood analysis in its pure form. In so doing, we adopt for Tennessee a balancing approach similar to the one espoused by the Supreme Court of Delaware in Hammond v. State, 569 A.2d 81, 87 (Del. 1989).

The first step in this analysis is to determine whether the State had a duty to preserve the evidence. Generally speaking,

8

the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law.[9]  It is, however, difficult to define the boundaries of the State's duty to preserve evidence.  This difficulty is recognized in California v. Trombetta, 467 U.S. 479, 488-89, 104 S.Ct. 2528, 2533-34, 81 L.Ed.2d 413 (1984).  It held:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.  To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

If the proof demonstrates the existence of a duty to preserve and further shows that the State has failed in that duty, the analysis moves to a consideration of several factors which should guide the decision regarding the consequences of the breach.  Those factors include:

> 1.  The degree of negligence involved;[10]
>
> 2.  The significance of the destroyed evidence, considered in

---

[9] See, e.g., Brady v. Maryland, 373 U.S. at 87, 83 S. Ct. at 1196, 10 L. Ed. 2d at, 218 (1963); United States v. Agurs, 427 U.S. at 110-11, 96 S. Ct. at 2401, 49 L. Ed. 2d at 353-54 (1976).

[10] This factor presumes negligence in the loss or destruction of the evidence.  Should the proof show bad faith, the trial judge may consider such action as may be necessary to protect the defendant's fair trial rights.

light of the probative value and reliability of secondary or substitute evidence that remains available; and

3. The sufficiency of the other evidence used at trial to support the conviction.

Of course, as previously stated, the central objective is to protect the defendant's right to a fundamentally fair trial. If, after considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges. Dismissal is, however, but one of the trial judge's options. The trial judge may craft such orders as may be appropriate to protect the defendant's fair trial rights. As an example, the trial judge may determine, under the facts and circumstances of the case, that the defendant's rights would best be protected by a jury instruction.[11]

---

[11]Such an instruction may contain the following language:

The State has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of a nature that the defendant would be unable to obtain comparable evidence through reasonably available means. The State has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

If, after considering all of the proof, you find that the State failed to gather or preserve evidence, the contents or qualities of which are in issue and the production of which would more probably than not be of benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

See State v. Willis, 393 P.2d 274, 276; See also California v. Trombetta, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534, 81 L. Ed. 2d 413, 422 (1984).

We now examine the case under submission in light of the considerations mentioned above.  Initially, the question is whether the State had a duty to preserve the videotape.  The exculpatory nature of the evidence has considerable significance in resolving that question. The exculpatory value of the videotape is, in our view, tenuous.  If the videotape showed Ferguson performing poorly on the sobriety tests at the police station, then the cause of the poor performance could either be intoxication, as urged by the State, or a medical condition, as urged by Ferguson.  If, on the other hand, the videotape showed Ferguson performing satisfactorily on the sobriety tests, then Ferguson's theory that medical problems caused him to appear intoxicated would be of questionable validity.[12]  Though the videotape was probably of marginal exculpatory value, it was at least "material to the preparation of the defendant's defense" and might have led the jury to entertain a reasonable doubt about Ferguson's guilt.  Because the videotape may have shed light on his appearance and condition on the morning in question, the State had a duty to preserve the videotape as potentially exculpatory evidence.  In erasing the tape before the defendant had an opportunity to view it, the State breached this duty.  Therefore, we must determine what consequences should flow from this breach of duty.

---

[12]The trial judge found that the tape "either could have helped [Ferguson] or possibly could have helped the State."

The first factor to consider in determining consequences is the degree of negligence involved. Unquestionably, Ferguson has failed to prove the State acted in bad faith in the destruction of the evidence. The only conclusion remaining is that the evidence was negligently destroyed, and we think the conduct was simple negligence, as distinguished from gross negligence.

The second factor addresses the significance of the missing evidence. Given the defendant's contention that his medical condition caused him to appear intoxicated, the videotape may not have been probative of intoxication. As to the availability of secondary evidence probative of the intoxication issue, Ferguson adduced expert medical testimony. His expert witness explained why the physical effects of his condition would have looked like intoxication to the officer. Ferguson testified about how his condition affected his balance and coordination, and he related long-term problems with his lower extremities. In spite of the unavailability of the videotape, Ferguson presented his defense in as complete a manner as was possible without the videotape.

The third factor to consider is the sufficiency of the convicting evidence. The arresting officer smelled alcohol on Ferguson's breath and concluded from his observation that Ferguson's physical appearance and speech were indicative of intoxication. Additionally, the arresting officer testified about failed on-scene field sobriety tests that were not videotaped.

Thus, the evidence adduced was sufficient, as a matter of law, for conviction.

Thus, it is abundantly clear to us that Ferguson was not hindered in the full and complete exposition of his theory to the jury. We conclude that he received a fundamentally fair trial and that he experienced no measurable disadvantage because of the unavailability of the videotaped evidence.

Accordingly, the judgment of the Court of Criminal Appeals is affirmed, and the costs are taxed against the appellant.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:

Anderson, C.J.
Holder, Barker, JJ.

Drowota, J., not participating