# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 4, 2001 Session

## STATE OF TENNESSEE v. JOHNNY MOFFITT

**Appeal from the Circuit Court for Henderson County**
**No. 89-370      Roy Morgan, Jr., Judge**

_____

### No. W2001-00781-CCA-R3-CD - Filed April 19, 2002

_____

The defendant, Johnny Moffitt, entered a plea of guilt to second degree murder. The trial court imposed a Range I sentence of 10 years. By agreement, the defendant reserved a certified question of law. See Tenn. R. Crim. P. 37. The issue presented in this appeal is whether the trial court should have dismissed the charge due to the loss or destruction of evidence. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the appellant, Johnny Moffitt.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was indicted on June 6, 1989, on charges of first degree murder and shooting into an occupied dwelling. The victim, Kenneth Waller, the brother of the defendant's ex-wife, was shot and killed in his residence. It was established at trial that the defendant had threatened to kill the victim some three or four days before the shooting. The victim's death was the result of gunshot wounds inflicted by a nine millimeter weapon. Five nine millimeter shell casings were found inside the victim's residence and seven were found in his yard. Gunshots had been fired into the front door from the outside. Two empty shell casings found in the defendant's yard were determined to have been fired from the same weapon as those at the scene of the crime. A description of a vehicle seen at the victim's residence at the time of the shooting was similar to that of a vehicle driven by the defendant. An officer had seen a nine millimeter pistol in the defendant's gun rack. When his residence was searched pursuant to a warrant, however, no such weapon was found and the defendant denied owning a pistol of that nature. Later, the defendant turned over to authorities a nine millimeter weapon, along with empty cartridges. Other evidence established that the defendant did indeed own a nine millimeter pistol prior to the shooting. A neighbor observed a white male

carrying an orange jacket enter the victim's residence just prior to the murder. That neighbor observed the same white male, whom she could not positively identify as the defendant, leave the residence without the orange jacket.

Based upon this circumstantial evidence, the defendant was convicted on both charges. This court affirmed on direct appeal. State v. Johnny Moffitt, No. 7 (Tenn. Crim. App., at Jackson, Dec. 5, 1990). Application for permission to appeal to the supreme court was denied March 4, 1991.

Later, the defendant filed a petition for post-conviction relief. The trial court denied relief. On appeal, this court reversed, holding that the defendant's trial counsel had been ineffective by conceding that an alibi defense, which would have been charged to the jury, had not been fairly raised by the evidence. A witness for the state had testified that he was with the defendant from 6:45 A.M. on the date of the murder until approximately 1:00 P.M. The medical examiner determined that the victim had died between 11:00 A.M. and 1:00 P.M. and that death could not have occurred after 1:00 P.M. Johnny Moffitt v. State, 29 S.W.3d 51, 54 (Tenn. Crim. App. 1999). After remand, the defendant, by agreement with the state, pled guilty to second degree murder and reserved a certified question of law for appeal.

During the course of the appeal and post-conviction litigation, three exhibits, a nine millimeter gun owned by the defendant, an orange vest owned by the defendant, and an orange jacket found at the crime scene, were lost by either the Henderson County Sheriff's Department or the Henderson County Court Clerk's Office. June Beecham, a deputy circuit court clerk, testified that there was a flood in the basement of the courthouse between 1998 and 1999. She testified that during the cleanup process, the orange jacket found at the scene of the crime and an orange vest introduced by the defendant at his original trial were accidentally lost. Ms. Beecham also testified that the nine millimeter gun, which had been made an exhibit by the defendant, had been sent to the Tennessee Bureau of Investigation after the trial and that its whereabouts were also unknown. The defendant's son, Brian Moffitt, testified that the jacket introduced by the state at trial would have been too small for the defendant at the time of the shooting. When questioned by an officer prior to the original trial, however, Brian Moffitt had acknowledged that it could have belonged to his father. Earl Jerome Lee, who did not testify at the first trial, was incarcerated with the defendant in the Department of Correction. Lee was prepared to testify in the second trial that the defendant had acknowledged shooting the victim and had actually provided some details of the murder.

The precise question is whether the defendant is entitled to a dismissal due to the loss of the gun, the vest, and the jacket. In State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), our supreme court rejected the bad faith test as to missing evidence, as adopted in Arizona v. Youngblood, 488 U.S. 51 (1998), and instead established a balancing test involving three steps. In Ferguson, the supreme court, implementing an analysis adopted by the Supreme Court of Delaware in Hammond v. State, 569 A.2d 81, 87 (Del. 1989), ruled as follows:

> The first step in this analysis is to determine whether the [s]tate had a duty to preserve the evidence. . . .

If the proof demonstrates the existence of a duty to preserve and further shows that the [s]tate has failed in that duty, the analysis moves to a consideration of several factors which should guide the decision regarding the consequences of the breach. Those factors include:

(1)     The degree of negligence involved;
(2)     The significance of the destroyed evidence, considered in light of the probative value and reliability of a secondary or substitute evidence that remains available; and
(3)     The sufficiency of the other evidence used at trial to support the conviction.

Of course, . . . the central objective is to protect the defendant's right to a fundamentally fair trial. If, after considering all the factors, the trial judge concludes that a trial without the missing evidence would not be fundamentally fair, then the trial court may dismiss the charges. . . .

2 S.W.3d at 917.

As a general rule, "the state has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Id. The due process clause of the Fourteenth Amendment to the United States Constitution entitles every defendant to a fair trial. The criminally accused has a constitutionally protected privilege to request, obtain, and have available for trial from the prosecution any evidence that is either material to guilt or relevant to punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963).

At the conclusion of the motion to dismiss, the trial court attributed the loss of the evidence to the state, determined that the loss was inadvertent and involved no bad faith, and denied relief. It reasoned that a photograph of the orange hunting jacket which had been introduced by the state was available for the new trial and observed that the defendant did not at anytime prior to being notified of the loss of the evidence ask to try on the jacket for size. In making this ruling, the trial court took into account the proffered testimony of Brian Moffitt that while the jacket would fit the defendant, if tried on at the time of the motion, it would have been too small at the time of the murder. The trial court determined that the orange vest introduced at the first trial was irrelevant and had no probative value for the new trial. Because it was stipulated that the nine millimeter pistol which had been submitted for ballistics testing prior to the first trial was not the murder weapon, it would not have been prejudicial to the defendant for that stipulation to be introduced as evidence in the new trial in substitution of the weapon itself. After summarizing the evidence produced at the first trial, the trial court concluded that it was sufficient to have supported the conviction and that a new trial, without the missing evidence, would not be fundamentally unfair.

The defendant cites State v. Osakalumi, 461 S.E.2d 504 (W. Va. 1995), in support of his claim for dismissal. In Osakalumi, the West Virginia Supreme Court utilized an analysis similar to

that adopted in <u>Ferguson</u> in reversing a conviction. The state had destroyed a couch which had been seized from the crime scene and which contained a bullet, hair, and bone fragments. The trajectory of the bullet was material to the opinion of the medical examiner in determining whether the killing was a homicide or a suicide. As additional support, the defendant cites <u>Gurley v. State</u>, 639 So.2d 557 (Ala. Crim. App. 1993). In <u>Gurley</u>, the state theorized that a murder victim had been robbed because of a charred wallet found on property linked to the defendant. The state lost the wallet, depriving the defendant of the ability to conduct examinations and determine whether the charred object was, in fact, a wallet and whether it belonged to the victim. Applying the <u>Hammond</u> test, the Alabama Court of Criminal Appeals reversed the conviction and remanded for a new trial with instructions to the trial court to either dismiss, suppress evidence relating to the lost object, or provide an adverse inference instruction. <u>Id.</u> at 567-569. A similar result was reached in <u>State v. Morales</u>, 657 A.2d 585 (Conn. 1995), where the Connecticut Supreme Court reversed a conviction based upon the loss of a rape victim's jacket which might have contained semen stains. Upon remand, the Connecticut Supreme Court directed the trial court to determine what remedy best served the interest of justice. <u>Id.</u> at 596.

In applying the <u>Ferguson</u> test to these circumstances, the state stipulates that it had the obligation to preserve the evidence. That it was lost or misplaced, probably during courthouse flooding, was mere negligence. Certainly, there was no proof of bad faith. The probative value and reliability of secondary substitute evidence that remains available, the second step in the process, is particularly helpful in this instance because there had been an earlier trial involving reported, available testimony. There was a photograph of the jacket and the prior recorded testimony by Brian Moffitt, who made no claims about the size. While comparing its size to the orange vest might have been helpful to the defense, the fact that comparisons were not made in the first trial could not have aided the case of the defendant. Before it was lost, the defendant had not expressed any interest in trying on the jacket. The orange vest was made an exhibit by the defendant in the first trial to show that while he did own such a vest, he did not own a jacket of the same color. Finally, it was stipulated that the nine millimeter pistol provided by the defendant in the first trial was not the same as that used to kill the victim. The stipulation, in our view, is just as helpful in explaining the defendant's initial denial to police of ownership of such a weapon.

As to the third step, while the evidence was entirely circumstantial, it was particularly compelling given the relationship between the defendant and the victim. The defendant had a motive for the crime and had threatened the victim. That shell casings from the murder weapon were found in the defendant's yard was especially incriminating. So was the defendant's initial claim that he did not own a nine millimeter weapon. His confession of guilt to an inmate after the first trial would have made the state's case even more persuasive in a second trial.

In <u>Ferguson</u>, our supreme court offered alternatives other than dismissal:
The trial judge may craft such orders as may be appropriate to protect the defendant's fair trial rights. As an example, the trial judge may determine, under the facts and circumstances of the case, that the defendant's rights would best be protected by a jury instruction.

2 S.W.3d at 917.

In a footnote, the court provided suggested language:

The [s]tate has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of a nature that defendant would be unable to obtain comparable evidence through reasonably available means. The [s]tate has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

If, after considering all of the proof, you find that the [s]tate failed to gather or preserve evidence, the contents or qualities of which are in issue and the production of which would more probably than not be of benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

Id. n.11.

In our view, an instruction of that nature would have been more than sufficient to resolve the issue. A dismissal would not have been warranted. In our view, the defendant would not have been deprived of a fundamentally fair trial in the second instance.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE