IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 7, 2015

## STATE OF TENNESSEE v. TERRANCE WILKS

**Appeal from the Criminal Court for Shelby County**
**No. 98-01734      John W. Campbell, Judge**

---

**No. W2014-02304-CCA-R3-PC  -  Filed September 30, 2015**

---

The Petitioner, Terrance Wilks, appeals from the Shelby County Criminal Court's order summarily dismissing his petition requesting deoxyribonucleic acid ("DNA") testing pursuant to the 2001 Post-Conviction DNA Analysis Act ("the Act"). See Tenn. Code Ann. §§ 40-30-301 to -309. The Petitioner contends that the post-conviction court erred when it concluded that he had not proven the statutory prerequisites for DNA analysis set forth in the Act. Following our review, we affirm the post-conviction court's summary dismissal of the Petitioner's petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Lance Chism, Memphis, Tennessee, for the appellant, Terrance Wilks.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In 1998, a Shelby County jury convicted the Petitioner of one count of rape of a child. The Petitioner appealed that conviction, challenging the sufficiency of the convicting evidence and the trial court's jury instruction on flight. See State v. Terrance Wilks, No. W1999-00279-CCA-R3-CD, 1999 WL 1097832 (Tenn. Crim. App. Nov. 22, 1999), perm. app. denied (Tenn. May 9, 2000).

On direct appeal, this court recounted the following evidence produced at the Petitioner's trial. On July 8, 1994, the victim, an eleven year-old, was visiting her aunt, Betty Hawkins. Ms. Hawkins's boyfriend, Vernon Smith, arrived at Ms. Hawkins's home that evening, and the Petitioner, a co-worker, accompanied him. Several other children, also relatives of Ms. Hawkins, were at the home as well. Later that evening, Ms. Hawkins and Mr. Smith went into one of the bedrooms to sleep. The Petitioner, the victim, and the other children remained in the living room to sleep. The victim fell asleep but later awoke and found that her pants and underwear had been pulled down. The Petitioner was standing near her. The victim asked the Petitioner what he was doing, and he told her to go back to sleep. When the victim tried to call for help, the Petitioner placed his hand over her mouth. The Petitioner then attempted to rape the victim vaginally, but she was initially able to prevent him from doing so "by moving evasively." Wilks, 1999 WL 1097832, at *1.

However, after a brief struggle, the Petitioner succeeded in penetrating the victim. Wilks, 1999 WL 1097832, at *1. The victim eventually managed to free herself, and she kicked the Petitioner in the groin. The Petitioner fell to the floor, and the victim ran to Ms. Hawkins's bedroom. The Petitioner fled out the back door. The victim told Ms. Hawkins about the assault, and when asked whether she had been raped, the victim replied that "it hurt." Ms. Hawkins inspected the victim and identified what she believed was semen on the victim's body. Id.

The victim was taken to the Memphis Sexual Assault Resource Center ("MSARC"), where she was examined by a forensic nurse, Elizabeth Thomas. Wilks, 1999 WL 1097832, at *1. Ms. Thomas collected forensic samples using cotton swabs inside the victim's vagina and a cotton pad for the area surrounding the victim's vulva. She also collected the victim's underwear for testing. Id.

Melissa Suddeth, a serologist at the Memphis Crime Laboratory, retrieved the samples Ms. Thomas had collected and tested them for the presence of sperm. Wilks, 1999 WL 1097832, at *1. The cotton swabs did not reveal the presence of sperm, but the cotton pad, used to collect a sample from the vulva, did test positive for sperm. Ms. Suddeth did not test the underwear. Id.

Following Ms. Suddeth's testing, the cotton pad was sent to the Tennessee Bureau of Investigation's ("TBI") Forensic Services Crime Laboratory in Jackson, Tennessee. Wilks, 1999 WL 1097832, at *2. There, TBI Special Agent Steven Weichman, a forensic scientist, attempted to conduct a DNA test on the sperm cells from the cotton pad. However, the sample collected was too small for analysis. Id.

At trial, the victim "testified unequivocally that [the Petitioner] forcibly penetrated her and that she was less than thirteen at the time of the offense." Wilks, 1999 WL

1097832, at *3. Ms. Hawkins testified that she observed semen on the victim immediately after the assault and that the victim was visibly upset. Additionally, the victim, Ms. Hawkins, and Mr. Smith each testified that the Petitioner fled out the back door after the rape. Id. at *4.

This court upheld the Petitioner's conviction on direct appeal. On July 13, 2014, the Petitioner commenced the instant action requesting post-conviction relief in the form of DNA analysis pursuant to Tennessee Code Annotated section 40-30-303.[1] In his petition, the Petitioner alleged that at the time of his original trial in 1998, DNA testing was in its relative infancy and that because DNA technology had "improved substantially [it] would now allow for the same swabs to be adequately tested." The Petitioner averred that this would "show that the material collected from the cotton pad used to swab the victim's vulva did not belong to or come from the Petitioner." On July 25, 2014, the State filed a response to the petition, alleging that the Petitioner failed to prove that he was entitled to DNA analysis.

In its August 22, 2014 order denying the petition for DNA testing, the post-conviction court concluded that the Petitioner failed to establish the second and third requirements of Tennessee Code Annotated section 40-30-304. In accordance with those statutory requirements, the court found that the Petitioner had "filed no evidence with the [c]ourt that show[ed] that the evidence that [was] to be tested still exist[ed] in such a state as to allow for DNA testing." The court noted that the State had "responded with allegations that the evidence in question no longer exist[ed]." The court further found that the record reflected that DNA testing had been attempted prior to the Petitioner's trial, but the sample was too small for analysis. The court stated that the Petitioner failed to provide any proof that additional testing "would overcome this problem." This timely appeal followed.

## ANALYSIS

On appeal, the Petitioner contends that the post-conviction court erred by summarily dismissing his petition for post-conviction DNA analysis. Specifically, he submits that, even if the post-conviction court did not err in concluding that he failed to prove that the evidence at issue still existed, his due process rights were violated based on the State's failure to preserve that evidence pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999). The State responds that the Petitioner is not entitled to relief because the post-conviction court correctly concluded that he had failed to meet the four criteria in section 30-40-304. The State further responds that Ferguson is inapplicable because the Petitioner's conviction preceded the enactment of the Act.

---

[1] The Petitioner filed his petition pro se but is represented by counsel on appeal.

## I. 2001 Post-Conviction DNA Analysis Act

Tennessee Code Annotated section 40-30-303 provides, as relevant to this appeal, that a person convicted of rape of a child may at any time "file a petition requesting the forensic DNA analysis of any evidence that is in the possession or control of the prosecution, law enforcement, laboratory, or court, and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence." Upon a showing by a petitioner that the following four criteria are met, the post-conviction court shall order DNA analysis after providing notice and an opportunity for the State to respond:

(1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

(2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

(3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

(4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Tenn. Code Ann. § 40-30-304.

When a petitioner proves that the four requirements in section 40-30-304 are met, the post-conviction court is required to order testing. However, failure to prove any one of the four criteria is fatal to a petitioner's claim. See William D. Buford v. State, No. M2002-02180-CCA-R3-PC, 2003 WL 1937110, at *6 (Tenn. Crim. App. Apr. 24, 2003). Therefore, "[i]f the [S]tate contests the presence of any qualifying criteria and it is apparent that each prerequisite cannot be established, the [post-conviction] court has the authority to dismiss the petition." Id.

"The post-conviction court is afforded considerable discretion in determining whether to grant a petitioner relief under the Act, and the scope of appellate review is limited." See Jack Jay Shuttle v. State, No. E2003-00131-CCA-R3-PC, 2004 WL 199826, at *4 (Tenn. Crim. App. Feb. 3, 2004). Before rendering its decision, the post-conviction court should consider all of the available evidence, including the evidence

-4-

presented at trial and any stipulations of fact made by either party.  Id.  The post-conviction court may also consider any opinions of this court and our supreme court on direct appeal of the petitioner's convictions and any appeals of the petitioner's prior post-conviction or habeas corpus actions.  Id.  On appeal, we review the post-conviction court's decision whether to grant or deny the petition under an abuse of discretion standard.  See State v. Ricky Lee Nelson, No. W2012-00741-CCA-R3-CD, 2014 WL 295833, at *5 (Tenn. Crim. App. Jan. 27, 2014).

The Petitioner first argues that the post-conviction court erred in concluding that he had failed to prove that the evidence was still in existence and in a condition sufficient to allow for testing.  The Petitioner asserts that the State's response alleging that the requested evidence was no longer in existence is insufficient to prove that the evidence is in fact no longer available for testing.  Further, the Petitioner argues that "a pro se petitioner should not be required . . . to present proof establishing that the physical evidence is in such a condition that DNA testing can still be conducted" in order to survive summary dismissal.  Rather, the Petitioner submits that the better practice is for the post-conviction court to appoint counsel "so that counsel can provide the post-conviction court with affidavits from experts, which address the testability of the physical evidence."

In its July 25, 2014 response to the petition for DNA analysis, the State recounted its attempt to locate the relevant evidence as follows:

> The State contacted [the] MSARC.  According to Kristin Gable, after the victim was seen at [the Rape Crisis Center ("RCC")], the nurse packaged the rape kit and hand delivered it to [the Memphis Police Department ("MPD")] and the evidence ceased to be in the possession of the MSARC at that time.  The State contacted the [MPD].  According to [Lieutenant] Cody Wilkerson and [Sergeant] Quita Knowlton, the rape kit is not currently in the possession of the [MPD].  According to MPD records, the only evidence that was in possession of the MPD was a cassette tape.  That cassette tape was forwarded to the Shelby County Clerk's property room on August 4, 1994.  The State contacted [the] TBI.  According to Donna Nelson, the rape kit was in the possession of [the] TBI from February 10, 1998 to June 18, 1998.  The evidence was returned to Lauren Henderson.  Lauren Henderson, an MPD employee, was assigned to the [RCC].  The State contacted the Shelby County Clerk's property room.  According to the clerks, they have not been able to locate any evidence associated with this matter, but they will continue to research the issue.  The State contacted the MPD property room.  According to the MPD property clerks, they have not been able to locate any evidence associated with this matter, but they will

continue to research the issue. So, the State has not been able to locate the rape kit and other evidence associated with this matter at this time.

In support of his contention that the State did not provide adequate proof that the requested evidence is no longer in existence, the Petitioner relies upon Steven Griffin v. State, No. M2003-00557-CCA-R3-PC, 2004 WL 1562390 (Tenn. Crim. App. July 13, 2004), rev'd on other grounds by Griffin v. State, 182 S.W.3d 795 (Tenn. 2006). In that case, a panel of this court examined whether the State's "blanket" response that "[n]o DNA evidence exists which could be subject to testing or analysis at this time" provided a substantial basis for the post-conviction court to conclude that the Petitioner had failed to meet criterion (2) of section 40-30-304. Id. at *4 (brackets and alterations in original). This court noted that the State's response "offered no explanation regarding evidence which might have existed previously or regarding efforts to locate evidence still existing." Id. The court went on to say that "[i]f the [S]tate is remiss in providing an explanation or if its explanation is not sufficiently detailed, the [post-conviction] court has an obligation to make reasonable factual inquiries before dismissing the petition." Id. (Emphasis added). However, post-conviction courts are not required to "conduct lengthy or protracted evidentiary hearings on the matter . . ." Id.

We find Griffin distinguishable from the instant case because here, unlike in Griffin, the State's response specifically outlined the steps it had taken to locate testable evidence from the Petitioner's case. In Griffin, the court merely held that a cursory assertion that the evidence no longer existed, unsupported by an explanation which is "sufficiently detailed," could not support summary dismissal of a petitioner's action. See id. The Petitioner asserts that the State's response is "further weakened" by its failure to attach affidavits from the people it contacted when attempting to locate the evidence. However, a panel of this court has previously affirmed a post-conviction court's summary dismissal of a petition where the State outlined the specific steps it had taken in an attempt to locate the evidence, even though no affidavits from the custodians of the evidence were provided. See Johnny Phelps v. State, E2005-02405-CCA-R3-PC, 2006 WL 2328661, at *3 (Tenn. Crim. App. Aug. 11, 2006) (upholding denial of petition for post-conviction DNA analysis where the State specifically "outlined the steps of its investigation," including conversations with local law enforcement and the TBI, and stated that it had been "unable to locate any biological evidence"). Because in this case the State provided a detailed response outlining its unsuccessful attempts to locate the requested evidence, the post-conviction court had a sufficient basis from which to conclude that the Petitioner failed to prove the evidence was still in existence.

Additionally, the Petitioner has provided no authority in support of his argument that a pro se petitioner should not be required to present proof that evidence is still in testable condition in order to survive summary dismissal. First, Tennessee Code

-6-

Annotated section 40-30-307 makes clear that the appointment of counsel is discretionary. ("The court <u>may</u> . . . appoint counsel for an indigent petitioner.") (Emphasis added). Moreover, even with the assistance of counsel on appeal, the Petitioner has provided no proof that the evidence he seeks to have analyzed is currently in testable condition. <u>See</u> <u>Powers v. State</u>, 343 S.W.3d 36, 59 (Tenn. 2001) (stating that "a petitioner [is] required to present scientific proof demonstrating that DNA analysis is possible when the State argues otherwise"); <u>see also</u> <u>Reginol L. Waters v. State</u>, No. M2003-01870-CCA-R3-CO, 2005 WL 351258, at *2 (Tenn. Crim. App. Feb. 11, 2005) (holding that where the uncontroverted trial testimony showed that the sperm sample collected was insufficient for DNA analysis, the petitioner had failed to prove that the evidence was still in existence and in such a condition that DNA analysis could be conducted).

In sum, the Petitioner has failed to satisfy subsection 40-30-304(2)–that the evidence is still in existence and in a condition sufficient to allow for DNA analysis. The failure to prove any one of the requirements of section 40-30-304 is fatal to the action. <u>See</u> <u>Buford</u>, 2003 WL 1937110, at *6. Therefore, we conclude that the post-conviction court did not abuse its discretion in summarily dismissing the petition, and the Petitioner is not entitled to relief.

## II. *State v. Ferguson*

The Petitioner next asserts that, upon concluding that the evidence is no longer in existence and in testable condition, his case should nonetheless be remanded for a hearing pursuant to <u>State v. Ferguson</u>, 2 S.W.3d 912 (Tenn. 1999). The State responds that <u>Ferguson</u> does not apply because the Petitioner's conviction precedes the enactment of the Act.

In <u>Ferguson</u>, our supreme court addressed the "consequences [that] flow from the State's loss or destruction of evidence alleged to have been exculpatory." <u>Id.</u> at 915. The analysis in <u>Ferguson</u> was focused on the State's pre-trial obligation to preserve evidence that might prove exculpatory. <u>See</u> <u>id.</u> at 917 (stating that its "central objective [was] to protect the defendant's right to a fundamentally fair trial"). Therefore, panels of this court have repeatedly refused to extend the <u>Ferguson</u> holding to cases brought under the Act, where a petitioner's conviction predated implementation of the Act. <u>See, e.g.</u>, <u>Buford</u>, 2003 WL 1937110, at *6 (stating that where the Act did not become effective until twenty years after the convictions at issue, the pre-trial obligation of the prosecution to preserve evidence pursuant to <u>Ferguson</u> would not apply); <u>Clinton Wayne Lynch v. State</u>, No. M2002-02801-CCA-R3-PC, 2003 WL 21349919, at *2 (Tenn. Crim. App. June 10, 2003) (noting that the "pre-trial obligation of the prosecution to preserve evidence necessary to assure a fair trial is not applicable" where the Petitioner pled guilty

fifteen years prior to the adoption of the Act). Furthermore, other panels of this court have questioned whether the rationale espoused in <u>Ferguson</u> would ever apply in a post-conviction case. <u>See</u> <u>Tommy Nunley v. State</u>, No. W2003-02940-CCA-R3-PC, 2006 WL 44380, at *6 n.3 (Tenn. Crim. App. Jan. 6, 2006); <u>Edward Thompson v. State</u>, No. E2003-01089-CCA-R3-PC, 2004 WL 911279, at *2 (Tenn. Crim. App. Apr. 29, 2004).

These cases reflect the sound policy that it would be "an unreasonable burden on the State to forever preserve each article of evidence collected in every investigation on the chance that it may later be called upon for further analysis." <u>See</u> <u>Ashad R.A. Muhammad Ali v. State</u>, No. M2005-01137-CCA-R3-PC, 2006 WL 1626652, at *3 (Tenn. Crim. App. June 2, 2006). As the State points out, in this particular case, the Petitioner was convicted in 1998, three years before the adoption of the Act and sixteen years before filing this action. The Petitioner has provided no authority or rationale that would persuade us to change course from the previous decisions of this court and apply <u>Ferguson</u> to cases where evidence is lost or destroyed prior to adoption of the Act. Accordingly, the Petitioner is not entitled to relief on this issue.

<u>CONCLUSION</u>

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-8-