IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville November 17, 2015

## STATE OF TENNESSEE v. PAULA SHOTWELL

**Appeal from the Criminal Court for Shelby County**
**No. 12-01589    W. Mark Ward, Judge**

_____

**No.  W2014-02194-CCA-R3-CD  -  Filed January 21, 2016**

_____

The Defendant, Paula Shotwell, was convicted after a bench trial in the Criminal Court for Shelby County of theft of property valued at more than $500 but less than $1000, a Class E felony.  *See* T.C.A. §§ 39-14-103; 39-14-105 (2014).  The trial court sentenced the Defendant to two years' probation.  On appeal, the Defendant contends that (1) the evidence is insufficient to support her conviction and (2) the State violated her due process rights by failing to preserve the stolen items as evidence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Lance R. Chism (on appeal) and Taylor Eskridge (at trial), Memphis, Tennessee, for the appellant, Paula Shotwell.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Amy P. Weirich, District Attorney General; and Jose Leon and Greg Gilbert, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case arises from an October 29, 2011 incident in which the Defendant was accused of the theft of more than $800 in merchandise from a Macy's department store at the Wolfchase Galleria shopping mall in Memphis.  The Defendant waived her right to a jury trial and was convicted after a bench trial of theft of property valued at more than $500 but less than $1000.

At the trial, Otis Davis, a loss prevention officer at Macy's, testified that his job duties included watching customers using a closed-circuit video surveillance system. He stated that on October 29, 2011, he observed the Defendant browsing the "high-end department" with a large, empty shopping bag and quickly picking up ladies' blouses and evening gowns without noting the items' sizes or prices. Mr. Davis stated that he called his partner, Rose McKee, who posed as a shopper on the sales floor in order to observe suspected shoplifters and followed them into areas not equipped with surveillance cameras, such as the ladies' fitting rooms.

An October 29, 2011 video recording from the Macy's surveillance cameras and four photographs were received as exhibits. The recording showed a woman browsing ladies' clothing and choosing various items from clothing racks. The woman carried several pieces of clothing, a red and white shopping bag, and a purse. The woman selected clothes and draped them over her arm. The clothing included a red blouse, a black blouse, and a grey suit or dress. The woman entered a fitting room and, several minutes later, left carrying fewer pieces of clothing. The photographs were captured from the recording and showed the woman and the clothing she carried.

Mr. Davis testified that after the Defendant left the fitting room, Ms. McKee examined the fitting room for clothing. He said that the Defendant went to another department, selected more clothes, and entered a second fitting room near the exit into the shopping mall. Mr. Davis stated that after the Defendant left the second fitting room, Ms. McKee examined the fitting room and "saw that all that merchandise was missing."

Mr. Davis testified that the Defendant left the store and that he and Ms. McKee stopped the Defendant in the mall, identified themselves, and asked for the store's merchandise. Mr. Davis stated that the Defendant handed them the red and white shopping bag and that they recovered earrings, evening dresses, and blouses from the bag. He said that the merchandise had a value of more than $800 and that the clothes were still on hangers. Mr. Davis stated that he and Ms. McKee took the Defendant to the loss prevention office, completed the proper paperwork, and called the police.

Mr. Davis testified that he, Ms. McKee, and the Defendant signed a "statement of admission," which contained an itemized list of the clothing removed from the Defendant's shopping bag.

The statement of admission provided,

I, Paula Shotwell, living at [address], make this statement voluntarily and of my own free will and accord, without intimidation by threats or promises, that on 10-29-11 I did take merchandise and/or cash belonging to Macy's

-2-

valued at $888.50, without consent or permission and with the intent to permanently deprive Macy's of their property.

The form contained a handwritten list of nine pieces of merchandise with each item's stock keeping unit (SKU) number, a description, quantity, and price. The items and their corresponding prices were as follows:

| Description | Total Price |
| --- | --- |
| Black dress | $109.00 |
| Purple | $79.00 |
| Red Suit | $99.00 |
| Black Top | $73.50 |
| Black dress | $179.00 |
| Black top | $69.50 |
| Gray top | $49.00 |
| B.B. Brilliant Earring | $125.00 |
| B.B. Brilliant Earring | $100.00 |

The list reflected that the total value of the items was $888.50, although we calculate the total as $883.00. The form was signed by the Defendant, Mr. Davis, and Ms. McKee and was dated "10-30-2011" by the Defendant and Ms. McKee. Mr. Davis said that he scanned each piece of clothing into the store's computer system, that the computer generated a printed report with the price of each item, and that he used this report to complete the handwritten list on the statement of admission. Mr. Davis stated that the Defendant did not pay for the clothing and that she did not have permission to take the merchandise without paying for it.

On cross-examination, Mr. Davis testified that the Defendant was unaccompanied in the store and that she was carrying a red and white shopping bag and a dress bag. He said that the red and white bag appeared to be empty and that he did not see the Defendant in the jewelry department. Mr. Davis stated that he did not know the number of items the Defendant took into the fitting room because she was carrying so many. He said, however, that he remembered that she had a black evening dress, a gray evening dress, a red suit, and several blouses. Mr. Davis stated that the surveillance equipment continued to record after the Defendant left the first fitting room. He said that he was not personally responsible for maintaining the surveillance recordings.

Mr. Davis testified that he joined Ms. McKee while she conducted floor surveillance of the Defendant but that he did not remember which items the Defendant brought out of the fitting room. He said, however, that the Defendant brought out "more than five" fewer items than she had taken into the fitting room.

Mr. Davis testified that the Defendant left Macy's with only the two shopping bags. He said that the Defendant placed some pieces of clothing on a "fixture" before she left. Mr. Davis stated that Ms. McKee did not find hangers or clothing sensors in the fitting rooms the Defendant had occupied.

Mr. Davis testified that the shopping mall exit of Macy's was equipped with surveillance cameras, that the direction of each camera was controlled by the camera operator, and that because he was on the sales floor and not in the control room, the cameras would not have recorded his and Ms. McKee's confronting the Defendant. Mr. Davis said that the loss prevention office included a holding area and that he confined the Defendant in the holding area while he completed paperwork and waited for the police. He stated that he searched the Defendant's dress bag and found additional pieces of clothing. Mr. Davis said that all items not belonging to Macy's were given to the police.

Mr. Davis testified that the Defendant told him she planned to sell the clothing to a person in the shopping mall. He said that the Defendant did not attempt to prove she had paid for the clothing. Mr. Davis stated that the Defendant was upset and "was begging us not to prosecute her." He said that he wrote the itemized list on the statement of admission and that he scanned the clothing into the system to create an internal report. He stated that if an item did not belong to Macy's, the barcode would not have been accepted by the computer system. Mr. Davis denied giving the Defendant a blank statement of admission to sign and later filling in the list of items and denied telling the Defendant that she would be free to leave if she signed the statement of admission. He said that generally, a statement of admission was completed in every theft case.

Mr. Davis presented to the trial court a computer-generated report entitled "Property Evidence/Return To Stock Record" reflecting the items he scanned. The form listed the "Date of Incident" as October 29, 2011, and the "Return to Stock" date as October 30, 2011. There were nine items listed by Department, Class, SKU number, description, and price.[1]

Mr. Davis testified that he took photographs of the items in the Defendant's possession, that the State did not request the photographs, and that he did not have them in court. Mr. Davis said that the items were not discounted or on sale. Mr. Davis stated

---

[1] The price list was identical to the statement of admission form except for the item labeled "black top" on the statement of admission and "drape neck fur top" on the return to stock record. The return to stock record lists a price of $79.00, whereas the statement of admission lists it as $73.50. Neither party raised this discrepancy at trial or in their briefs. In any case, the total of the merchandise was more than $500.

that the computer system would reflect if an item were on sale but later said that a discount would show "most of the time" unless the store had not "set the sale."

Mr. Davis testified that the clothing was kept in an evidence room but after his third court appearance, it was returned to the sales floor. Mr. Davis did not know the brand names, sizes, or whether the items had been sold.

On redirect examination, Mr. Davis identified the red and white shopping bag the Defendant was carrying as a "Charming Charlie bag" from another store in the shopping mall. He said that the computer system differentiated between items from Macy's that had been purchased and items that had not been purchased. Mr. Davis stated that the computer system did not identify the two pairs of earrings as having been purchased. He clarified that the computer-generated report would have reflected whether an item was discounted and said that none of the items recovered from the Defendant were discounted. Mr. Davis denied having made promises to the Defendant or having coerced her to sign the statement of admission.

Rose McKee, a Macy's loss prevention officer, testified that on October 29, 2011, she was working floor surveillance posing as a shopper. Ms. McKee stated that Mr. Davis called her and reported a woman carrying an empty shopping bag and picking up merchandise without looking at sizes or prices. Ms. McKee said that she observed the Defendant's engaging in the same behavior. Ms. McKee stated that the Defendant entered two fitting rooms.

Ms. McKee testified that after Mr. Davis joined her on the floor and the Defendant left the second fitting room, Ms. McKee looked inside the Defendant's fitting room. Ms. McKee said that the room was empty and that she did not find hangers, security tags, price tags, or money. She stated that she and Mr. Davis confronted the Defendant when the Defendant was past the "point of sale" but inside the exit that led to the shopping mall. Ms. McKee identified herself in the surveillance video recording and identified the red and white shopping bag in the photographs.

Ms. McKee testified that the Defendant had merchandise in a shopping bag and a dress bag. She said that she and Mr. Davis identified themselves, asked for the merchandise, and escorted the Defendant to the loss prevention office. Ms. McKee stated that they completed paperwork and that the Defendant told them "she had someone in the mall waiting on her for the merchandise." Ms. McKee said that they called the police and that the police arrested the Defendant. Ms. McKee identified her signature at the bottom of the statement of admission and denied forcing the Defendant to sign it. Ms. McKee stated that the computer-generated report was created by scanning the price tags of the items and that the report accurately reflected the items recovered from the Defendant's shopping bags.

Ms. McKee testified that the value of the items totaled $888.50 and that generally loss prevention officers took photographs of the stolen items and returned the items to stock. She said that the items were new and in sellable condition.

On cross-examination, Ms. McKee testified that Mr. Davis completed the statement of admission form and took photographs of the clothing. She did not remember the time of day the incident occurred. Ms. McKee stated that the Defendant was stopped outside the store exit, not inside. Ms. McKee said that the Defendant had a gray suit and earrings when she entered the fitting room and that the Defendant left the room with three items, which the Defendant placed on a clothing rack before attempting to leave the store. Ms. McKee stated that she observed the Defendant in the jewelry department before the Defendant went into the fitting room.

Ms. McKee testified that she took the Defendant's purse and the dress bag to the loss prevention office and that Mr. Davis scanned the stolen items and completed the statement of admission. Ms. McKee said that she returned the Defendant's purse and that the police and Mr. Davis "took care of" the dress bag. Ms. McKee stated that the Defendant begged them not to have her arrested but that the Defendant did not cry.

Memphis Police Officer J.Z. Harris testified that on October 29, 2011, he responded to a shoplifting call at Wolfchase Galleria. He said that when he arrived, the Defendant had been detained by store security and that items were "laying on the floor to be photographed." He stated that the items included evening gowns, purses, and a few pieces of jewelry. Officer Harris stated that he placed the Defendant under arrest and started processing the paperwork due to the value of the stolen items. He said that the value of the clothing was more than $500 and that he left the clothing at the store.

On cross-examination, Officer Harris testified that the Defendant did not have access to the items on the floor in the loss prevention office. Relative to the types of items on the floor, he only recalled the evening gowns and thought the jewelry was earrings. Officer Harris said that at the time of the arrest, generally the police did not take photographs of the stolen items, although that policy had since changed. He stated that loss prevention officers usually took photographs of the items and that it was routine procedure for the items to remain at the store.

Officer Harris testified that during the drive to the police station, the Defendant was crying, screaming, kicking, and uncontrollable. He reported to his superiors that the Defendant might need to be restrained further. Officer Harris stated that the Defendant was not fully cooperative and was emotional but that she did not resist arrest.

The trial court found the Defendant guilty of theft of property valued at more than $500 but less than $1000. The court found that the witnesses's testimony as to the value

of the property was significant and that the Defendant signed an unrefuted confession or statement of admission. The court noted that even if all the items were discounted by forty percent, the total value would be more than $500. The court noted the combination of the witnesses' testimony and the computer-generated report and concluded that "her admission that that was the amount . . . is sufficient" to determine value. This appeal followed.

The Defendant contends the evidence is insufficient to support her conviction. She argues that the value of the stolen merchandise was not proven beyond a reasonable doubt. She does not argue that the State failed to show the statutory elements of theft. The State responds that the evidence sufficiently established the value of the stolen items.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

A person commits theft of property when "with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Theft is a Class E felony "if the value of the property . . . is more than five hundred dollars ($500) but less than one thousand dollars ($1,000)." T.C.A. § 39-14-105. Value is defined as

(i)     The fair market value of the property or service at the time and place of the offense; or

(ii)    If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense;

-7-

. . .

      (C) If property or service has value that cannot be ascertained by the criteria set forth in subdivisions (a)(36)(A) and (B), the property or service is deemed to have a value of less than fifty dollars ($50.00)[.]

T.C.A. § 39-11-106(a)(36)(A), (C).

The record reflects that the computer-generated report was created by scanning the price tags of the items in the Defendant's possession. Mr. Davis testified that the computer would have registered any applicable discounts, provided the store had "set the sale." The Defendant signed the statement of admission, which listed the same items and the total price. Despite a discrepancy between the price list on the statement of admission and the list on the computer-generated report related to one item, the value calculated using either value is more than $500. Mr. Davis testified that the merchandise was not on sale. The trial court found that the signed statement of admission alone was sufficient proof to establish the value of the stolen items, and any conflicts in the evidence were resolved by the court. We conclude that the evidence is sufficient to establish the value of the stolen property and to support the Defendant's conviction. She is not entitled to relief on this basis.

The Defendant contends that the State's failure to collect and preserve the stolen items violated her due process rights. The State responds that the Defendant waived this issue and, alternatively, that the State had no duty to preserve the clothing as evidence. The Defendant argues the failure to obtain a ruling did not result in waiver but requests plain error review in the event this court concludes she has waived appellate consideration of the issue.

The Defendant filed a pretrial motion to dismiss the indictment for failure to preserve exculpatory evidence. The record does not reflect that the trial court held a hearing on the motion, and the trial court did not issue an oral or written pretrial ruling on the motion. At the trial, the Defendant discussed the issue during closing argument and raised it in the motion for new trial, although the trial court failed to address the issue specifically in its order denying the motion for new trial. This issue was raised in the trial court and is not waived. We will therefore consider the issue on its merits.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. See *Johnson v. State*, 38 S.W.3d 52, 55 (Tenn. 2001). As a result, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to his guilt or lack thereof or to the potential punishment faced by a defendant. See *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

-8-

Our supreme court has held that the State has a duty to preserve discoverable evidence when the evidence

> might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*State v. Ferguson*, 2 S.W.3d 912, 917 (Tenn. 1999) (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)); *see* Tenn. R. Crim. P. 16 (discoverable evidence).

In the present case, the Defendant has not presented any evidence that the clothing itself was exculpatory or material to the Defendant's defense. We note the trial court's finding that the signed statement of admission independently was sufficient proof of the clothing's value. The information in the statement of admission was corroborated by the computer-generated report and the testimony of Mr. Davis and Ms. McKee that Mr. Davis immediately completed both documents upon detaining the Defendant. Mr. Davis testified that the clothing was not on sale and that the computer system would have taken into account sale prices. The police did not have a duty to collect the clothing, and therefore no due process violation occurred. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE