IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 12, 2020

## STATE OF TENNESSEE v. BUFORD CORNELL WILLIAMS

**Appeal from the Criminal Court for Davidson County
No. 2014-C-2231     Monte Watkins, Judge**

_____

### No. M2019-01073-CCA-R3-CD
_____

Defendant, Buford Cornell Williams, was convicted of selling .5 grams or more of a substance containing cocaine.  Defendant appealed, challenging the sufficiency of the evidence.  This court affirmed the judgment of the trial court. *State v. Buford Williams*, No. M2017-00507-CCA-R3-CD, 2017 WL 6028876, at *1 (Tenn. Crim. App. Dec. 5, 2017), *perm. app. denied* (Tenn. Feb. 12, 2018).  Defendant subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel for failing to file a timely motion for new trial.  The post-conviction court granted relief for the purpose of filing a motion for new trial which would permit an appeal if the motion was denied.  Defendant filed a motion for new trial which was denied by the trial court.  On appeal, Defendant argues that the trial court erred when it denied his motion to dismiss based on the State's failure to preserve evidence or exclude evidence from the trial.  Having reviewed the record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Buford Cornell Williams.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kristen Kyle-Castelli, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Facts*

This court recited the following facts on direct appeal:

On May 20, 2014, Detective Matthew Boguskie and his team of Metropolitan Nashville police officers orchestrated a "buy-bust operation." These operations entailed a confidential informant purchasing drugs in order to catch the drug dealer during or immediately after the criminal conduct. Detective Boguskie's "very reliable" confidential informant made contact with William Thomas in the parking lot of a carwash near the intersection of Dickerson Road and Ewing Drive in Davidson County. Mr. Thomas allegedly worked at Prince's Chicken, which is adjacent to the carwash parking lot. From a distance of approximately fifty feet, Detective Boguskie observed the confidential informant strike up a conversation from his vehicle with Mr. Thomas in the carwash parking lot. Next, Mr. Thomas took the confidential informant's cellphone and made a phone call. About twenty minutes after the phone call, Defendant drove into the parking lot. Mr. Thomas approached the driver's side of the vehicle driven by Defendant, and Detective Boguskie "observed an interaction" between Defendant and Mr. Thomas. After the "interaction," Mr. Thomas got inside the confidential informant's vehicle. At that point, the confidential informant gave the take down signal. Approximately two minutes elapsed between the arrival of Defendant and the moment when the take down signal was given. Defendant, Mr. Thomas, and the confidential informant were arrested.

Prior to the beginning of the operation, the confidential informant and the vehicle driven by the confidential informant were thoroughly searched to ensure that no contraband was in the possession of the confidential informant. At that point, the confidential informant was stripped of any personal funds and provided with money that had been photocopied so that the serial numbers could be tracked by the police officers. After the take down signal was given, Sergeant Cary Briley arrested the confidential informant. As soon as Sergeant Briley approached the car, the confidential informant handed the Sergeant a "white rock in plastic." Sergeant Briley searched and handcuffed the confidential informant and searched the confidential informant's car. No other drugs or money were found. A field test indicated that the substance recovered was 0.7 grams of cocaine base. Detective Boguskie testified that in his

experience 0.7 grams of cocaine has a street value of around fifty dollars. When the substance was tested in a laboratory, Laura Adams, a forensic scientist at the Tennessee Bureau of Investigation, found it to be 0.64 grams of cocaine base.

Detective Forrest Drake took Defendant into custody and Mirandized him. Defendant told Detective Drake that he was in the parking lot to get some chicken from Mr. Thomas. No chicken was found in the possession of Defendant, but fifty dollars was recovered from Defendant's right front pocket. The serial numbers on the money recovered from Defendant matched the money provided to the confidential informant to make the drug purchase.

Defendant chose to testify on his own behalf. He maintained that he was present in the carwash parking lot only to get some chicken from Mr. Thomas and to give Mr. Thomas a ride home. Defendant's explanation for not having any chicken in his possession at the time of his arrest was that "the officer didn't give [Defendant] a chance to pull around to the front of Prince's Chicken." He testified that he picked up Mr. Thomas in the carwash parking lot from time to time in order to give Mr. Thomas a ride home. On this particular occasion, Defendant pulled into the carwash parking lot, and Mr. Thomas approached his vehicle. Defendant asked Mr. Thomas, "Well, where my chicken at?" According to Defendant, Mr. Thomas responded, "'I'm going to get you your chicken, but here, I'm going to pay you the fifty that I owe you.'" At that point, Mr. Thomas showed Defendant some "dope" which he had concealed in his sock. Defendant recounted Mr. Thomas saying, "'Dude over there want a fifty. . . . I'm going to make this sale, but I don't really trust him.'" At that point, Mr. Thomas shut the door to Defendant's car and told Defendant to pull around to the front of Prince's Chicken. However, as Defendant was getting ready to pull out of the parking lot to go over to Prince's Chicken, Defendant was stopped by the police. Defendant claims that he was not told why he was arrested, but rather the police said, "'Don't worry about it.'"

*Buford Williams*, 2017 WL 6028876, at \*1-2.

Prior to trial, the State could not locate Defendant's cell phone that had been collected the day of Defendant's arrest. The cell phone was located and analyzed approximately two weeks before Defendant's trial, and the data extraction report was given to Defendant. Defendant filed a motion to dismiss the indictment pursuant to *State v. Ferguson*, alleging that the State mishandled and lost Defendant's cell phone. *State v.*

- 3 -

*Ferguson*, 2 S.W.3d 912 (Tenn. 1999). The trial court denied the motion to dismiss because the phone was not lost and was analyzed. The trial court offered to continue the trial to allow Defendant more time to analyze the cell phone. Defendant declined the trial court's offer. After speaking with Defendant's counsel, the State took the position that it would not introduce any evidence related to Defendant's cell phone at trial.

After a bench trial, Defendant was found guilty of sale of .5 grams or more of a substance containing cocaine. The trial court sentenced Defendant to fourteen years in confinement. Defendant filed an untimely motion for new trial. Defendant appealed his conviction, challenging the sufficiency of the evidence. As noted above, this court affirmed the judgment of the trial court. *Buford Williams*, 2017 WL 6028876, at *1.

On April 9, 2018, Defendant timely filed a *pro se* petition for post-conviction relief alleging ineffective assistance of counsel. Counsel was appointed and an amended petition was filed alleging ineffective assistance of counsel for failing to file a timely motion for new trial. After an evidentiary hearing, the post-conviction court granted post-conviction relief. A motion for new trial was timely filed, it was denied, and this appeal ensued.

The motion for new trial asserted that the trial court erred by denying Defendant's motion to dismiss the indictment based upon *Ferguson*. The trial court concluded that Defendant's *Ferguson* claim was "moot because the State eventually found the cell phone, turned it over to [Defendant], and agreed to not use evidence found on the phone at trial." The trial court denied Defendant's motion for new trial.

*Analysis*

On appeal, Defendant argues that the trial court erred when it denied Defendant's motion to dismiss based on the State's failure to preserve evidence or to exclude such evidence from trial. The State argues that Defendant is not entitled to relief because the State did not lose or destroy the cell phone. The State also contends that the State offered no evidence regarding the cell phone at trial. Further, the State argues that Defendant "offers no more than mere speculation that the phone would have yielded exculpatory evidence had it been subject to further analysis." We agree with the State.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides every defendant the right to a fair trial. To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Further, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. *United States v. Agurs*, 427 U.S. 97, 110-11 (1976).

- 4 -

The State has a general duty to preserve all evidence subject to discovery and inspection as part of Tennessee Rule of Criminal Procedure 16. Our state supreme court adopted a multi-part test for courts to use in determining whether the loss or destruction of evidence has deprived a defendant of a fair trial. *Ferguson*, 2 S.W.3d at 917.

Here, the State did not lose or destroy the cell phone. Although the State misplaced the cell phone, it eventually located the phone. The phone was analyzed and the report was provided to Defendant two weeks before trial. The trial court offered to continue the trial to allow Defendant to further analyze the cell phone. Defendant rejected the trial court's offer. Further, the State agreed not to enter any evidence from the cell phone at trial. As Defendant introduced no further analysis of the cell phone, we are left to speculate what exculpatory evidence may have been produced if the cell phone had undergone further analysis. "The mere possibility of exculpatory content does not trigger a finding that the State failed in its general duty to preserve evidence under *Ferguson*." *State v. Ronnie D. Sims*, No. M2004-02491-CCA-R3-CD, 2005 WL 3132441, at *8 (Tenn. Crim. App. Nov. 22, 2005), *perm. app. denied* (Tenn. Mar. 20, 2006). Defendant cannot show the phone was lost or destroyed. Therefore, it is unnecessary to apply the *Ferguson* factors. Defendant is not entitled to relief.

## *Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

- 5 -