IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 8, 2026

**STATE OF TENNESSEE v. CLIESHA D. TEDUNJAYE**

**Appeal from the Circuit Court for Madison County**
**No. 23-591    Kyle C. Atkins, Judge**

_____

**No. W2025-00772-CCA-R3-CD**

_____

The Defendant, Cliesha D. Tedunjaye, was convicted in the Madison County Circuit Court of driving under the influence ("DUI) and DUI per se, Class A misdemeanors; possessing a handgun while under the influence, a Class A misdemeanor; violating the open container law, a Class C misdemeanor; and failing to maintain her lane of travel, a Class C misdemeanor. After a sentencing hearing, the Defendant received an effective sentence of eleven months, twenty-nine days to be served as forty-eight hours in jail and the remainder on probation supervised by community corrections. On appeal, the Defendant claims that the evidence is insufficient to support her convictions of DUI, DUI per se, and possession of a handgun while under the influence because the State failed to prove her intoxication. Based upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and CAMILLE R. MCMULLEN, J., joined.

Joshua V. Lehde (on appeal), Assistant Public Defender - Appellate Division; Jeremy Epperson (at trial), District Public Defender; and Caroline Ballentine and John Hamilton (at trial), Assistant District Public Defenders, for the appellant, Cliesha D. Tedunjaye.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Joshua R. Gilbert, Assistant Attorney General (pro hac vice); Jody S. Pickens, District Attorney General; and Allison P. Martin and Tyler F. Buckley, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

This case arose from a traffic stop of the Defendant's vehicle on February 19, 2023. In August 2023, the Madison County Grand Jury indicted the Defendant for DUI and DUI per se, possessing a handgun while under the influence, violating the open container law, simple possession of marijuana, and failing to maintain her lane of travel. Before trial, the Defendant filed a motion to dismiss the indictment or, in the alternative, to provide the jury with an instruction pursuant to *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), based on the State's failure to preserve police dashcam video of her traffic stop. The trial court held a brief hearing on the motion on May 15, 2024. At the outset of the hearing, the State advised the trial court that both parties had agreed the appropriate remedy for the missing video was a jury instruction. On May 20, 2024, the trial court entered an order finding that Pattern Jury Instruction 42.23 regarding the duty to preserve evidence should be given to the jury.[1] The Defendant proceeded to trial in January 2025.

At trial, Deputy Hunter Taylor of the Madison County Sheriff's Office ("MCSO") testified that he was on patrol in the early morning hours of February 19, 2023, and saw a maroon Nissan sedan "swerving back and forth in the lane, crossing over . . . the fog line into the emergency lane." About one-half of the Nissan traveled into the emergency lane, so Deputy Hunter initiated a traffic stop. The driver stopped the Nissan in the parking lot of a church on Auditorium Drive, and Deputy Taylor approached the driver, who was the Defendant. No one else was in the vehicle.

Deputy Taylor testified that he saw a green, leafy substance on the Defendant's lap and on the front passenger seat. He also saw a bottle of Paul Mason whiskey in the Defendant's purse. He said the Defendant produced her driver's license and stated that she was "coming back from a party in Memphis." Referring to his written notes about the stop,

---

[1] The instruction provides:

> The State has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of such a nature that the defendant would be unable to obtain comparable evidence through reasonably available means. The State has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

> If, after considering all of the proof, you find that the State failed to gather or preserve evidence, the contents or qualities of which are at issue and the production of which would more probably than not be of benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

*See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I. - Criminal 42.23 (28th ed. 2024).

he said the Defendant told him that she had consumed "a cup of alcohol." Deputy Taylor had the Defendant get out of the car and asked her several questions such as the current time of day. She said she thought the time was 1:30 a.m., but the time was actually 3:00 a.m. Deputy Taylor also asked her to rate her level of intoxication on a scale of one to ten, with one being completely sober and ten being the most intoxicated she had ever been in her life. The Defendant rated her intoxication as "1.5." Deputy Taylor asked the Defendant what level she thought was safe to drive a vehicle, and she responded, "3."

Deputy Taylor testified that he suspected the Defendant was intoxicated and that he administered field sobriety tests to her. Before he administered the tests, he asked if she had any physical disabilities or head injuries that could impact her ability to perform the tests. The Defendant said she had three prior back surgeries and did not have any cartilage in her knees. Based on that information, Deputy Taylor administered "non-standardized" field sobriety tests: the finger dexterity test, counting backward from forty-seven to thirty-one, and the modified Romberg balance test. Deputy Taylor explained that for the finger dexterity test, the Defendant had to touch the tip of each finger with her thumb. The Defendant performed three sets of the finger dexterity test but missed counts and missed touching her fingertips several times. During the counting-backward test, the Defendant slurred her words and counted the numbers out of order. For the modified Romberg balance test, the Defendant had to stand with her feet together, arms by her sides, lean her head back with her eyes closed, and hold that position while she estimated a time of thirty seconds. The Defendant swayed during the test and estimated a time of thirty-three seconds.

Deputy Taylor testified that after the tests, he placed the Defendant under arrest because he thought she was unsafe to operate a motor vehicle. He read an implied consent form to her, and she consented to giving a blood sample. Deputy Taylor searched the Defendant's car and collected a white plastic baggie containing two and one-half grams of a green, leafy substance that he thought was marijuana. He also collected the "half bottle" of whiskey and a nine-millimeter handgun from the Defendant's purse. He poured out the whiskey in view of his dashboard camera because he could not collect liquids as evidence. He transported the Defendant to a hospital for the blood draw and watched as medical personnel collected her blood sample.

On cross-examination, Deputy Taylor acknowledged that he did not smell alcohol on the Defendant's person and that no one reported the Defendant as driving erratically. He also acknowledged that his dashcam video of the traffic stop "disappeared," that the video was the best evidence of what occurred, and that a court had found him not credible in another case.

Defense counsel asked Deputy Taylor if the Defendant said she swerved because her purse fell over and she bent down to retrieve it. Deputy Taylor responded, "I don't remember the exact conversation." He acknowledged that on the modified Rhomberg balance test, the Defendant estimated the time only three seconds more than thirty seconds. Deputy Taylor said the test had a five-second "buffer"; therefore, the Defendant's estimated time of thirty-three seconds satisfied the test. He said, though, that her body swayed during the test. He acknowledged that the Defendant was wearing "heels" during the test.

Deputy Braxton Bolton of the MCSO testified that in the early morning hours of February 19, 2023, he was in training and was riding with Deputy Taylor. The deputies saw the Nissan swerve out of its lane and cross the white fog line multiple times. Deputy Braxton said that the second time, the Nissan crossed the fog line "pretty far," so Deputy Taylor initiated a traffic stop.

Deputy Bolton testified that the Defendant was "very energetic," that she was very unsteady on her feet, and that she appeared to have bloodshot eyes. A green, leafy substance was on her pants, and a "half-full" bottle of whiskey and a nine-millimeter handgun were in her purse. Deputy Taylor administered field sobriety tests to the Defendant. Deputy Bolton said he thought the Defendant was under the influence of alcohol based on "the way she was carrying herself." He then stated, "She had slurred speech, bloodshot eyes. She was, you know, very energetic when there's really nothing to be energetic about; it was a traffic stop. When talking with her, [she] just appeared to be under the influence of alcohol." Deputy Bolton said the Defendant told them that she was "coming from Memphis from a party." Deputy Bolton said he was "shocked" the Defendant drove "that far" when, in his opinion, she appeared to be under the influence of alcohol.

Special Agent Corbin Hughes of the Tennessee Bureau of Investigation Crime Laboratory testified as an expert in forensic toxicology that he analyzed the Defendant's blood sample. The sample had been collected at 3:46 a.m. on February 19, 2023, and had a blood alcohol concentration ("BAC") of .108 gram percent, which was above Tennessee's per se limit of .08 gram percent. Special Agent Hughes said that a person's BAC usually reached its maximum level thirty to sixty minutes after the person's last alcoholic drink and that a BAC of .108 gram percent could affect the person's coordination, awareness, critical thinking skills, and rational judgment. He stated that a condition known as auto-brewery syndrome could cause the creation of alcohol in the body and could cause a person to exhibit signs of being under the influence of alcohol even though the person did not consume alcohol.

- 4 -

On cross-examination, Special Agent Hughes testified that he thought a person should be able to smell alcohol on someone who had consumed even one alcoholic drink. After his testimony, the State rested its case-in-chief.

The Defendant testified that on the night of February 18, 2023, she drove to Memphis to attend a friend's birthday party at City Strippers, a male strip club. She stated that "I don't drink [alcohol]" but that she took a bottle of Paul Mason whiskey for her friend to drink at the party. The Defendant did not consume any alcohol, and the bottle was "almost full" when the police stopped her at 2:58 a.m. on February 19. The Defendant told the officers that she was "coming from Memphis." She acknowledged to the jury that she swerved her vehicle, explaining that her bag "toppled over and some stuff fell out and it went under [her] brake and [her] gas [pedals]."

The Defendant testified that Deputy Taylor asked her some questions and had her perform field sobriety tests. She said she did not remember performing the finger dexterity test. Defense counsel asked if she performed a test in which she leaned back and counted to thirty, and she stated, "He had me doing some test, but my head wasn't back." The Defendant had health issues, which included three back surgeries, six stomach surgeries, five foot surgeries, a hip replacement, and a "loop recorder" in her heart. She said that she also suffered from cyclic vomiting syndrome, which caused her to vomit for "days straight" and caused her to lose her teeth. On the night of the party, the Defendant was sick and did not feel well. She was not going to attend the party, but people urged her to go, so she consumed her nausea medication and drove to Memphis. Defense counsel asked if she consumed any alcohol at the party or during the drive home, and she said no.

On cross-examination, the Defendant testified that the party ended about 2:00 a.m. and that she drove from Memphis back to Jackson. The Paul Mason bottle was in her backpack, not her purse, and was "almost full." She said three or four women had consumed a "shot" of whiskey from the bottle at the party, and she denied telling the officers that she consumed any alcohol. She stated, "I didn't tell the officers I had one drink. I told them they had one drink and that's why the bottle was almost full. Not me, they." She said she did not remember being asked to rate her level of intoxication.

The Defendant testified that she did not perform the finger dexterity test but that she "walked the line" and "did the nose test." She also "count[ed] something" but did not lean her head back while she counted. The Defendant told the officers about her three back surgeries and other medical conditions, and the officers asked if she had experienced any head trauma. She acknowledged that she swerved while she was driving. She maintained that she did so because items fell out of her bag and rolled under her gas and brake pedals, so she had to retrieve the items. The Defendant said that the substance on her lap was hemp, not marijuana, and that the amount of hemp did not weigh two and one-half grams.

- 5 -

At that point, the State showed the green, leafy substance collected by Deputy Taylor to the Defendant, and she stated, "I didn't have 2.5 [grams], so this ain't mine."

The Defendant testified that she was sick at the party due to her cyclic vomiting syndrome and that she had to take medication for her illness before she left the party. She said her medication was the only explanation for her elevated BAC because she did not consume any alcohol. When Deputy Taylor stopped her car and approached her, she told him to make sure his body camera was turned on. The Defendant said she could see that his body camera was turned on and that she also made sure his dashboard camera was turned on. She said those cameras would have shown she was not intoxicated.

Eccentric Cox testified that she was the Defendant's oldest daughter. Defense counsel asked if the Defendant ever consumed alcohol, and Ms. Cox answered, "Not often, if at all." Ms. Cox spoke with the Defendant on the telephone soon after the police stopped the Defendant's vehicle. Ms. Cox said that she did not notice the Defendant having slurred speech and that the Defendant "literally had a hole in her foot" from a recent medical procedure. On cross-examination, Ms. Cox testified that she was twenty-two years old and that she had not seen the Defendant consume alcohol since Ms. Cox was ten years old. At the conclusion of Ms. Cox's testimony, the defense rested its case.

Deputy Taylor testified on rebuttal for the State that he was not wearing a body camera at the time of the Defendant's stop because the MCSO did not have body cameras at that time. Due to the Defendant's medical condition, Deputy Taylor did not have her perform a field sobriety test that involved walking. He maintained that the Defendant said she consumed one cup of alcohol and that he asked her to rate her level of intoxication. The Defendant did not tell him about any nausea. On cross-examination, Deputy Taylor acknowledged that his patrol car was equipped with a dashboard camera and that the dashcam video of the Defendant's stop was missing.

Special Agent Hughes testified on rebuttal for the State that some medical conditions could cause "issues with alcohol." For example, some stomach surgeries could affect the absorption rate of alcohol. Moreover, some medical conditions could cause a person who ingested a small amount of alcohol to show "artificially high" levels of alcohol in the person's blood. However, the higher alcohol concentration would still affect the person's ability to operate a motor vehicle.

On cross-examination, Special Agent Hughes acknowledged the possibility that the Defendant's medical condition caused her elevated BAC. He said, though, that he had never heard of "cyclic vomiting syndrome." On redirect-examination, Agent Hughes testified that he was most familiar with auto-brewery syndrome as the cause of an elevated BAC. However, auto-brewery syndrome was "very rare."

At the conclusion of Special Agent Hughes's testimony, the State rested its case. During the final jury charge, the trial court gave a *Ferguson* instruction, informing the jurors that they could infer the "absent" dashcam video would have been favorable to the Defendant. Nevertheless, the jury found the Defendant guilty as charged in the indictment of DUI, DUI per se, possessing a handgun while under the influence, violating the open container law, and failing to maintain her lane of travel. The jury found her not guilty of simple possession of marijuana. After a sentencing hearing, the trial court sentenced her to eleven months, twenty-nine days for the DUI convictions, Class A misdemeanors, and merged the convictions. The trial court also sentenced her to eleven months, twenty-nine days for possessing a handgun while under the influence, a Class A misdemeanor, and ordered that she serve the sentence concurrently with the DUI sentence. The trial court imposed ten-dollar fines for the Defendant's violating the open container law and failing to maintain her lane of travel.

## ANALYSIS

The Defendant claims that the evidence is insufficient to support her convictions of DUI, DUI per se, and possession of a handgun while under the influence because the State failed to prove her intoxication. She contends that given the *Ferguson* instruction, which allowed the jury to infer that the dashcam video was favorable to the defense; Deputy Taylor's unreliability as a witness; her own testimony, in which she denied consuming any alcohol or telling the officers that she consumed alcohol; and evidence of her cyclic vomiting syndrome, which could have impacted her BAC, the evidence was insufficient for the jury to conclude she was intoxicated. The State argues that the evidence is sufficient. We agree with the State.

When the sufficiency of the evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-91 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

Therefore, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it

with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The guilt of a defendant, including any fact required to be proven, may be predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of review for the sufficiency of the evidence is the same whether the conviction is based on direct or circumstantial evidence or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

The DUI statute provides:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess; [or]

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more[.]

Tenn. Code Ann. § 55-10-401(1), (2). It is also an offense for a person to possess a handgun while under the influence of alcohol. Tenn. Code Ann. § 39-17-1321(a).

Taken in the light most favorable to the State, the evidence shows that in the early morning hours of February 19, 2023, Deputies Taylor and Bolton saw the Defendant's car swerving in her lane of travel and crossing the white fog line into the emergency lane. Deputy Taylor conducted a traffic stop, and the Defendant told him that she had consumed a cup of alcohol. Moreover, she rated her level of intoxication on a scale of one to ten as one and one-half, not zero. Deputy Taylor had the Defendant perform the finger dexterity test, count backward, and perform the modified Romberg balance test. The Defendant missed counts and touches of her fingertips during the finger dexterity test, slurred her words and counted numbers out of order while counting backward, and swayed during the

- 8 -

balance test. Based on her performance on the tests, Deputy Taylor arrested her for DUI, searched her car, and collected a half-empty bottle of whiskey and a handgun from her bag. Deputy Bolton said that the Defendant was very unsteady on her feet and appeared to have bloodshot eyes and that, in his opinion, she was intoxicated. Although the Defendant testified that she did not consume any alcohol, her blood test revealed a BAC of .108 gram percent, which was over the per se limit of .08 gram percent. The trial court instructed the jury on the missing dashcam evidence, but the jury chose to accredit the testimony of the State's witnesses and resolved any conflicts in favor of the State. Therefore, the evidence is sufficient to support the convictions.

## CONCLUSION

Upon our review, we affirm the judgments of the trial court.

s/ JOHN W.CAMPBELL
JOHN W. CAMPBELL, SR., JUDGE